[Cite as *State v. Flanagan*, 2019-Ohio-4665.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | | Hon. Craig R. Baldwin, J. |
| | : | | Hon. Earle E. Wise, J. |
| -vs- | : | | |
| | : | | |
| BENJAMIN JAMES FLANAGAN, | : | | Case No. 2018CA00175 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court
of Common Pleas, Case No. 2017-
CR-2423

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      November 12, 2019

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
Prosecuting Attorney
Stark County, Ohio

By: RONALD MARK CALDWELL
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza South, Suite 510
Canton, Ohio 44702-1413

For Defendant-Appellant

WAYNE E. GRAHAM, JR.
4450 Belden Village St., N.W.
Suite 703
Canton, Ohio 44718

*Baldwin, J.*

{¶1} Benjamin James Flanagan appeals the decision of the Stark County Court of Common Pleas convicting him of Theft from a Person in a Protected Class, a violation of R.C. 2913.02(A)(I)and/or(A)(2)and/or (A)(3)(B)(3), a felony of the third degree and Attempt to Commit an Offense, Theft from a Person in Protected Class, a violation of R.C. 2923.02(A)(1), and/or (A)(2) and/or (A)(3)(B)(3) a felony of the fifth degree. Appellee is the State of Ohio.

### STATEMENT OF FACTS AND THE CASE

{¶2} Appellant performed work for Victoria Summers and she later discovered unauthorized withdrawals from a jointly held checking account for several thousand dollars. The ensuing investigation lead to charges against Appellant who was convicted and sentenced to thirty six months in prison and ordered to pay restitution to the co-owner of the account.

{¶3} Appellant responded to a Facebook post by Victoria Summers soliciting assistance with maintenance on her property. Appellant's wife was a casual acquaintance of Ms. Summers as both shared an interest in Border Collies. Ms. Summers attended the Appellant's wedding, in December 2016, so she was familiar with Appellant.

{¶4} Appellant agreed to perform the work on the property, and Ms. Summers agreed to pay ten dollars per hour for all work completed. The terms of the agreement were disputed by Appellant as he contended that he had agreed only to work on a per project basis but he conceded that Ms. Summers made one payment of thirty dollars and one payment of three hundred dollars to Appellant for work performed, both by checks drawn on an account that reflect her name as well as the name Kernie Sawatis.

{¶5}   Ms. Summers explained that the money in the account was Mr. Sawatis's and that she had power of attorney for him.  Mr. Sawatis was living with her and under her care due to his medical condition. He was seventy-five years old when the incident described in the indictment occurred.

{¶6}   Ms. Summers was dissatisfied with Appellant's work, so she discontinued using his services after issuing the two checks.  Appellant contended that he continued to work throughout June 2017 and that Ms. Summers suggested that she pay for his services by paying his credit card debt.

{¶7}   In July 2017, Ms. Summers noticed unauthorized debits in her bank account statement reflecting payment to a Chase Bank Credit Card and to a Discover Card.  She notified Chase Bank and the Stark County Sheriff's Office and then visited her bank. While at the bank there was another attempt to debit her account for the amount of $1174.56.  She was asked if she had authorized the transfer and she answered that she had not, so the payment was not made. Ms. Summers found five payments to Chase or Discover that were not authorized by her in the following amounts: $1585.00, $816.12, $3000.00, $1203.08, $1602.58 for a total of $8206.78.

{¶8}   The Stark County Sheriff's Office investigated and discovered that the payments had been made to credit card accounts that were held in the name of Appellant's wife, Shannon Flanagan.  Detective Green approached Mrs. Flanagan about the payments and she indicated that she understood that her husband had made the payments. She also believed that her husband was employed.  Detective Green approached Appellant, who claimed that he had no knowledge of the payments.  When he was told that his wife would be charged with criminal offenses as a result of the

investigation, he insisted that his wife would not do such a thing and that he was responsible. He admitted he was unemployed and was carrying his wife's Chase credit card. He claimed that Ms. Summers had made a payment to the Chase Card via phone, but Summer's phone records did not reflect any calls to Chase or Discover. During the trial Appellant admitted he had received the $30.00 and $300.00 check and expanded his story to include an assertion that Ms. Summers suggested that she pay him by paying his credit card debt and that she relayed this information via a cell phone. When asked why he did not offer this explanation to Detective Green, he complained that he did not have the opportunity.

{¶9} Detective Green obtained the records for the credit cards at issue and discovered payments to the credit card accounts that matched the amount and approximate date of the withdrawals from the victim's bank account. The Detective also discovered the rejected payment in the amount of $1174.94, which she described as matching the amount and date of the charge that was submitted when Ms. Summers was present at the bank investigating the source of the unauthorized charges. She did not approve that charge, the bank rejected it and the records offered by the state reflected the rejection.

{¶10} Detective Green also reviewed the Appellant's bank records and found that Appellant had insufficient funds to make any of the contested payments.

{¶11} Ms. Summer's possession of a cell phone was an issue in this case, as Appellant claimed that she used the phone to make transactions and to authorize him to withdraw funds. He also claimed to have spoken to her on July 4th for forty-seven minutes on this cell phone. That call was found in Appellant's phone records, but Detective Green

traced that number to a Renee Wilcox, so that number did not belong to Victoria Summers. Subsequent to her hiring and termination of Appellant, Ms. Summers did obtain a cell phone, but she did not have it during that time that Appellant alleged she used her cell phone.

**{¶12}** Appellant presented his case to the jury and was found guilty on both counts. He filed a timely notice of appeal and submitted one assignment of error:

**{¶13}** "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

## STANDARD OF REVIEW

**{¶14}** When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus. *State v. Poutney,* 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, 'if believed, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), quoting *Jenks* at paragraph two of the syllabus. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.' " *State v. Ketterer,* 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, quoting *State v. Dennis,* 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997).

**{¶15}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
>
> * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶16}** The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other

words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, quoting *State v. Gore,* 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶17} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins, supra* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

### ANALYSIS

{¶18} Appellant was convicted of a violation of R.C. 2913.02, Theft, when the victim was an elderly person or disabled adult.  That section requires the Appellee to establish that Appellant:

"***with purpose to deprive the owner of property or services, shall

knowingly obtain or exert control over either the property or services in any

of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

(2)     Beyond the scope of the express or implied consent of the owner or

person authorized to give consent;

(3)     By deception"


{¶19}  The Appellee must also establish the victim was elderly or a disabled adult. An "Elderly person" means a person who is sixty-five years of age or older. R.C. 2913.01(CC) and a "Disabled adult" means a person who is eighteen years of age or older and has some impairment of body or mind that makes the person unable to work at any substantially remunerative employment that the person otherwise would be able to perform and that will, with reasonable probability, continue for a period of at least twelve months without any present indication of recovery from the impairment, or who is eighteen years of age or older and has been certified as permanently and totally disabled by an agency of this state or the United States that has the function of so classifying persons." R.C. 2913.01(DD).

{¶20}  Mr. Sawatis, an owner of the checking account, is undeniably an elderly person, being over sixty-five years of age, and the record demonstrates that he was a disabled adult, being over the age of eighteen and requiring constant care and attention in his activities of daily living.  Appellant does not contest these facts, but instead attacks the credibility of Ms. Summers, contends that the owner of the subject bank account did not testify and argues that there was insufficient evidence that Appellant possessed or controlled the funds

{¶21}  During the trial, Appellant did not dispute that he received the funds, but maintained that he had performed work that entitled him to payment and that Ms.

Summers had agreed to pay his credit card bills. This admission to the Detective, supplemented by bank records, undermines his contention there was no proof he received the funds and had possession or control over the funds.

**{¶22}** Ms. Summers testified that this was a joint account and that she had Mr. Sawatis power of attorney, giving her the power to control the funds. Appellant contended that Ms. Summers authorized him to access the account and acknowledged receiving two checks drawn on the account. Based upon Ms. Summer's testimony, the jury could reasonably conclude that she was an owner of the account, a person authorized to give consent to access the account as well as the person responsible for control of the account on Mr. Sawatis's behalf. The bank records supplemented her testimony regarding ownership of the account and Appellant has offered no evidence to contradict the conclusion that she was an owner or the person controlling the account.

*{¶23}* Finally, Appellant argues that Ms. Summers is not credible and suggests that her testimony is not credible. As we noted above, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations," *Murphy*, *supra* and, with regard to manifest weight, we "will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision." *Picklesimer, supra.*

**{¶24}** After viewing the evidence in a light most favorable to the prosecution, we hold that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, that the evidence is not against the manifest weight of the evidence as nothing within the record supports a conclusion that the jury lost its

way and this is not an exceptional case in which the evidence weighs heavily against the conviction.

{¶25} Appellant's assignment of error is overruled and the decision of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Wise, John, P.J. and

Wise, Earle, J. concur.