**[Cite as *State v. Paoletti*, 2023-Ohio-913.]**

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| SHANE J. PAOLETTI | : | Case No. 2022CA00050 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No. 21CR00546


JUDGMENT:                        Affirmed


DATE OF JUDGMENT:                March 21, 2023


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JENNY WELLS                               CHRIS BRIGDON
20 South Second Street                    8138 Somerset Road
Newark, OH  43055                         Thornville, OH  43076

*King, J.*

{¶ 1}   Defendant-Appellant, Shane J. Paoletti, appeals his July 21, 2022 conviction in the Court of Common Pleas of Licking County, Ohio.  Plaintiff-Appellee is the state of Ohio.  We affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   On October 14, 2021, the Licking County Grand Jury indicted appellant on two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4) and (5).  The charges arose from an incident involving a child who was twelve years old at the time and appellant was eighteen.

{¶ 3}   A jury trial commenced on May 31, 2022.  The jury found appellant guilty of the (A)(4) count and not guilty of the (A)(5) count.  By judgment entry filed July 21, 2022, the trial court sentenced appellant to five years of community control.

{¶ 4}   Appellant filed an appeal with the following assignment of error:

I

{¶ 5}   "THE CONVICTION OF THE APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED THROUGH WITNESS TESTIMONY AND EXPERT TESTIMONY."

I

{¶ 6}   In his sole assignment of error, appellant claims his conviction for gross sexual imposition is against the manifest weight of the evidence.  We disagree.

{¶ 7}   On review for manifest weight, this court acts as a "thirteenth juror" and examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines "whether in resolving conflicts in the evidence,

the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 8} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 9} Appellant was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4) which states:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶ 10} " 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a

female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 11} S.S. testified in May 2019, she went over to appellant's home. T. at 125, 127-128. Present was her younger half-sister Sa.S., her cousin G.W., appellant, and appellant's father. 123, 125, 127, 128, 149. The group watched television and movies while seated on a couch. T. at 128. The line up on the couch from left to right was G.W., appellant, S.S., and Sa.S. T. at 131. They watched television "until past two." *Id.* At some point, S.S. fell asleep on the couch. T. at 132. She awoke and felt appellant touching her vagina under her shorts, over her underwear, with his left hand. T. at 132-133. Thereafter, appellant's father came downstairs and drove S.S., Sa.S, and G.W. to G.W.'s house. T. at 134. S.S. testified Sa.S. and G.W. were in the room when it happened. *Id.* G.W. was looking at her phone at the time and Sa.S. was sleeping. T. at 135-136. A year later, appellant sent S.S. an apology via Facebook Messenger or text. T. at 137. S.S. deleted the messages from appellant. *Id.* She eventually told her new stepsister about the incident. T. at 138.

{¶ 12} Newark Police Detective Mackenzie Harris investigated S.S.'s allegation. T. at 152. Detective Harris confirmed at the time of the incident, appellant was eighteen years old and S.S. was twelve. T. at 154. Appellant voluntarily went to the police station to speak with Detective Harris. T. at 158. He was accompanied by G.W. and his father who informed the police his son was autistic and may be confused in speaking with them. *Id.* At the start of the interview, Detective Harris informed appellant he was not under arrest and was free to go at any point. T. at 159. He was seated closest to the exit door so he would not feel cut off from the only door to the room. *Id.* Portions of appellant's

interview were played for the jury. State's Exhibit 1. Within a fifteen-minute period during the interview, appellant denied touching S.S., then moved to maybe he accidently touched her, to yes, "I rubbed her vagina for five minutes at the most - - maybe two minutes." T. at 183-184. Detective Harris was unable to retrieve messages between appellant and S.S. from Facebook Messenger. T. at 193-194.

{¶ 13} G.W. testified for the defense. She stated at the time of the incident, she was best friends with appellant and she and S.S. were like sisters. T. at 206-207. She testified the line up on the couch from left to right was appellant, herself, appellant's father, S.S. and Sa.S. T. at 210. G.W. was awake and present the whole time and never saw anything happen between appellant and S.S. T. at 211-212, 214. If she had seen anything inappropriate, she would have told somebody. T. at 212-213. She testified appellant's father was on the couch all night. T. at 217-218.

{¶ 14} Psychologist Shannon Porter, Ph.D. evaluated appellant, meeting with him on two occasions prior to trial. T. at 238. The purpose of her evaluation "was to identify any psychological risk factors or vulnerabilities for false confessions * * * in the present case." T. at 239. Appellant told Dr. Porter he was not truthful when speaking with the police. T. at 242. When asked why he admitted to the alleged offense even though he did not actually commit the acts charged, appellant stated, " 'I was frightened, nervous. It was my first time speaking to a detective. I thought she would just drop it when I admitted it.' " T. at 258. His goal was to be able to leave the interview room and go home. T. at 258-259. Dr. Porter testified to appellant's mental health disorders (major depressive disorder, oppositional defiant disorder, attention deficit hyper activity disorder, persistent mood disorder) and his various treatments including a variety of medications. T. at 244-

247. Appellant met criteria for "autism spectrum disorder" which is relevant "for risk factors - - um - - for false - - false confessions." T. at 246-248. After reviewing appellant's medical and school records and performing additional testing and identifying specific risk factors, Dr. Porter opined appellant "had numerous personal risk factors associated with false confessions." T. at 250-262. However, she could not say whether appellant actually made a false confession to the detective. T. at 262, 270, 290. On cross-examination, Dr. Porter explained there were fifteen to twenty risk factors to consider and appellant met nine of them. T. at 271. She agreed there was "no clear right line of the number of risk factors that would have to be met to show * * * a highly suggestible person or to show a definite false confession." T. at 280. She acknowledged appellant's speech was clear, organized, and logical, he was oriented to person, place, time, and situation, he provided correct personal and background information, and he did not exhibit any evidence of significant problems with attention or concentration or staying alert and engaged throughout his evaluation. T. at 269.

**Manifest Weight**

{¶ 15} In his appellate brief, appellate cites the conflicting testimony and argues the "jury clearly lost its way." We disagree.

{¶ 16} As cited above, credibility of the witnesses are issues for the trier of fact. Although G.W. testified to not seeing anything happen between S.S. and appellant, S.S. testified appellant touched her vagina and G.W. was looking at her phone at the time of the incident. As for the line up on the couch, G.W. placed two people sitting between appellant and S.S. while S.S. placed appellant immediately to her right. Appellant touched S.S. with his left hand. It was the jury's prerogative to believe the testimony of

S.S. "Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision." *State v. Flanagan,* 5th Dist. Stark No. 2018CA00175, 2019-Ohio-4665, citing *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24. We find the jury's verdict was consistent with the weight of credible evidence presented.

**Confession**

{¶ 17} Appellant challenges his confession under a manifest weight of the evidence standard. The jury heard Detective Harris's testimony of the circumstances surrounding appellant's confession along with portions of the audiotaped confession. The jury also heard from appellant's expert witness regarding appellant's risk factors to give a false confession. Again, it was within the jury's province to determine the credibility of appellant's confession. We find the jury did not lose its way.

{¶ 18} We note in his appellate brief at 17, appellant asserts, "the Detective did overbear the will of the Appellant, in violation of his United States Constitution Fifth Amendment Right." (Emphasis sic.) Appellant never filed a motion to suppress the confession nor objected to the introduction of the audiotaped confession; therefore, he has forfeited his right to challenge the constitutionality of his confession other than plain error. *State v. Burke,* 73 Ohio St.3d 399, 406, 653 N.E.2d 242 (1995); Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating an error or obvious defect that affected the outcome of the trial. *State v. Long,* 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978); *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."

*Id.* at paragraph three of the syllabus.  Appellant did not make any arguments as to plain error.  "[A]ppellant has failed to cite legal authority and develop an argument as to the existence of an obvious defect in the proceedings that affected appellant's substantial rights."  *A.A. v. F.A.,* 5th Dist. Delaware No. 18 CAF 10 0079, 2019-Ohio-1706, ¶ 22, citing *State v. Benitez-Maranon*, 9th Dist. Summit No. 26461, 2014-Ohio-3575, ¶ 7.

{¶ 19} We have reviewed the confession and do not find any manifest miscarriage of justice.  We do not find any plain error.

{¶ 20} Upon review, we do not find the jury clearly lost its way nor created a manifest miscarriage of justice in finding appellant guilty of gross sexual imposition.

{¶ 21} The sole assignment of error is denied.

{¶ 22} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.

By King,  J.,

Gwin, P.J. and

Delaney, J. concur.

AJK/db