[Cite as *State v. Barnthouse*, 2019-Ohio-5209.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180286 |
| | | TRIAL NO. B-1705430 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| CHADWICK BARNTHOUSE, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 18, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald Springman*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} Looking to replace several windows in their home, Donald and Rita Stopler, via a chain of referrals, contacted defendant-appellant Chadwick Barnthouse in November 2014. He provided the Stoplers with a favorable estimate, which convinced them to enter into a contract with him for the job, and consistent with their agreement, the Stoplers handed him a check for several thousand dollars. Unfortunately, Mr. Barnthouse never performed his end of the bargain, nor did he return all of the money. Eventually convicted for theft, Mr. Barnthouse now appeals, challenging his conviction on weight and sufficiency grounds. Our review of the record, however, convinces us that the jury had before it sufficient and credible evidence upon which to convict him. We accordingly affirm his conviction.

I.

{¶2} After receiving an outreach from Mrs. Stopler, Mr. Barnthouse visited the Stopler residence, inspected the windows, and provided the Stoplers with an estimate of $7,200 for the total cost of the window replacement (i.e., parts and labor). Encouraged because Mr. Barnthouse's estimate fell below other estimates that they had received, the Stoplers entered into a written contract with him for the work, signed by both Mr. Barnthouse and Mrs. Stopler. Though Mr. Stopler did not sign the contract, both Mr. and Mrs. Stopler testified that he was present when the contracting occurred.

{¶3} The contract called for Mr. Barnthouse to remove seven windows and to install new windows in their place. The total price was $7,267, of which the Stoplers paid $6,200 upfront to Mr. Barnthouse in the form of a personal check from their joint-checking account. After about six weeks, with no windows materializing, Mrs. Stopler contacted Mr. Barnthouse, who claimed that the windows were

delivered, but in the wrong size. After another six weeks elapsed, Mr. Barnthouse reported that the windows were again delivered in the wrong size. Eventually, the Stoplers grew suspicious with Mr. Barnthouse's evasiveness and the lack of any new windows. After giving him several opportunities to perform under the contract, they turned the matter over to the authorities.

{¶4} Mr. Barnthouse ultimately returned $1,000 to the Stoplers, but never repaid the balance nor did he perform any of the work required under the contract. A warrant for his arrest was issued in spring of 2015, but authorities did not apprehend him until 2017. After his arrest, Mr. Barnthouse was indicted and tried before a jury for the theft of the $5,200 still owed to the Stoplers. A jury ultimately found him guilty, and the trial court sentenced him to a year in prison (for which he was credited 267 days) and ordered him to pay restitution in the amount of $5,200.

{¶5} Mr. Barnthouse now appeals his conviction and raises a single assignment of error challenging both the weight and sufficiency of the evidence supporting his conviction.

II.

{¶6} In reviewing the sufficiency of the evidence, the court must ask, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Brooks*, 1st Dist. Hamilton No. C-000763, 2001 WL 1590643, *2 (Dec. 14, 2001). Evaluation of a challenge to the manifest weight of the evidence requires that the appellate court review the entire record, weigh the evidence and reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way, resulting in a manifest miscarriage of justice. *Id.*

3

A.

{¶7}   Initially, Mr. Barnthouse challenges the evidence underlying the elevation of the offense pursuant to R.C. 2913.02(B)(3) to a theft involving a person in a protected class.  R.C. 2913.02(B)(3) provides that:

> if the victim of the offense is an elderly person * * * a violation of [R.C. 2913.02] is theft from a person in a protected class, and division (B)(3) of this section applies. * * * If the value of the property or services stolen is one thousand dollars or more and is less than seven thousand five hundred dollars, theft from a person in a protected class is a felony of the fourth degree.

R.C. 2913.01(CC) defines an "elderly person" as "a person who is sixty-five years of age or older."  In this case, Mr. Stopler was 65 or older, whereas Mrs. Stopler was not, and that distinction draws most of Mr. Barnthouse's attention on appeal.

{¶8}   Based on the ramifications under R.C. 2913.02(B)(3), Mr. Barnthouse insists that if he stole from anyone, it was Mrs. Stopler rather than her husband, and thus the elevation of the crime to a fourth-degree felony pursuant to R.C. 2913.02(B)(3) should not have occurred.  Mr. Barnthouse emphasizes the lack of proof that Mr. Stopler qualified as the "owner" of the funds in the joint-checking account or that he contributed financially to the funds from the joint-checking account.  This formalistic argument posited by Mr. Barnthouse, however, places too high a standard on the requisite proof of ownership for purposes of the elevation of a conviction under R.C. 2913.02.  Indeed, he seems to demand some type of auditing precision that would need to trace each dollar handed to him to an income source originating with Mr. Stopler.

4

{¶9} The theft statute, R.C. 2913.02(A), however, is not so draconian. It provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * (3) [b]y deception[.]" R.C. 2913.01(D) defines an "owner" as "any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services[.]" The standard for proving ownership under R.C. 2913.02 requires showing that the defendant deprived someone " 'of property who had "possession or control of, or any license or any interest in" that property.' " *State v. Grayson*, 11th Dist. Lake No. 2006-L-153, 2007-Ohio-1772, ¶ 26, quoting *State v. Rhodes,* 2 Ohio St.3d 74, 76, 442 N.E.2d 1299 (1982); *State v. Miller*, 2015-Ohio-644, 29 N.E.3d 258, ¶ 30 (3d Dist.) (same). Moreover, "[t]he important question is not whether the person from whom the property was stolen was the actual owner, but rather whether the defendant had any lawful right to possession." *Id.*

{¶10} The undisputed evidence presented by the state at trial demonstrated that the money which Mr. Barnthouse received came from a joint-checking account held in both Mr. and Mrs. Stoplers' names. Mr. Stopler testified that the account was a shared account and "State's Exhibit 2" depicts an image of the check to Mr. Barnthouse which bears the names of both of the Stoplers. Mr. Stopler certainly had an interest in the joint-checking account and the lawful right to possess and spend those funds.

{¶11} The jury accordingly had before it sufficient evidence that enabled it to conclude that the "victim," Mr. Stopler, was an "owner" of the checking account and over the age of 65 at the time of the incident, thus satisfying the requisites of R.C. 2913.02(A)(3) and (B)(3) for "theft from a person in a protected class." *See State v.*

*Flanagan*, 5th Dist. Stark No. 2017-CR-2423, 2019-Ohio-4665, ¶ 22 (account holder's testimony and bank records sufficient to establish that joint-checking account holder was also "owner" on account); *State v. Jones,* 8th Dist. Cuyahoga No. 92921, 2010-Ohio-902, ¶ 13 (state presented sufficient evidence from which a rational trier of fact could conclude that the victim was the "owner" of the stolen property, because evidence adduced proved that victim "possessed" the items). This evidence also disposes of Mr. Barnthouse's weight challenge regarding the elevation to a fourth-degree felony—the jury had before it evidence of Mr. Stopler's age, the joint-checking account, and the joint presence of the Stoplers when Mr. Barnthouse came and pitched them on his proposal. We see nothing to cast doubt on the jury's findings or the trial court's judgment. Thus the R.C. 2913.02(B)(3) finding was supported by both the sufficiency and weight of the evidence.

B.

{¶12} Mr. Barnthouse also challenges the weight and sufficiency of the evidence demonstrating his intent to deceive. For matters involving theft "by deception," a conviction under R.C. 2913.02(A)(3) requires the state to establish that the defendant engaged in a deceptive act to deprive the victim of possession of property or services. *State v. Edmonson*, 92 Ohio St.3d 393, 398, 750 N.E.2d 587 (2001) ("The state must prove that the accused engaged in a deceptive act to deprive the owner of possession of property or services."). R.C. 2913.01(A) defines deception as "knowingly deceiving another * * * by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates * * * a false impression in another[.]"

{¶13} In cases involving a contract for services, such as here, the state can prove a violation of R.C. 2913.02(A)(3) by demonstrating that at the time Mr.

6

Barnthouse "took the money he had no intent to repay the money or perform under the contract in exchange." *State v. Burton,* 5th Dist. Delaware No. 15CAA100083, 2016-Ohio-5380, ¶ 20; *State v. Smith*, 12th Dist. Butler No. CA2004-11-275, 2005-Ohio-6551, ¶ 9 ("[T]he state must demonstrate that at the time the defendant took the money, he had no intent to repay the money or perform under the contract in exchange."). Generally, performance of a significant amount of such a contract tends to demonstrate intent to perform, while minimal work performed tends to show the opposite. *Burton* at ¶ 20; *State v. Kerr*, 6th Dist. Ottawa No. OT-13-036, 2015-Ohio-2228, ¶ 20 ("[P]erformance of a significant amount of the work under the contract demonstrates an intent to perform the contract[.]"). This is a fact-dependent inquiry that requires consideration of all of the evidence and context.

{¶14} Here, both the Stoplers testified that Mr. Barnthouse never performed any work required under the contract. While they did acknowledge that he claimed to have ordered the windows, Mr. Barnthouse never presented evidence corroborating any such purchase. If Mr. Barnthouse actually ordered the windows and was hoodwinked by the manufacturer, that might help show that he actually intended to perform. *See Kerr* at ¶ 22 ("We conclude that appellant's placing an order for the building * * * alone does not constitute significant performance of the contract[.]"). But such evidence is not before us—instead, we see a contractual promise with absolutely no performance.

{¶15} Furthermore, although he returned $1,000 to the Stoplers, trial testimony indicates that he failed to repay the remaining $5,200 despite repeated promises to the Stoplers, and failed to contact the Stoplers for approximately two years thereafter. *See State v. Lewis*, 9th Dist. Summit No. 21722, 2004-Ohio-1233, ¶ 26 (defendant's failure to return money or contact victims supported inference that

defendant took the victim's money with no intent to perform consideration for the money and satisfied both the weight and sufficiency of the conviction).

{¶16} While none of this is conclusive evidence of intent, it certainly provided the jury with circumstantial evidence that Mr. Barnthouse never intended to perform the contract or return the money. Circumstantial evidence is " 'proof of facts or circumstances by direct evidence from which [the factfinder] may reasonably infer other related or connected facts that naturally flow according to the common experience of people.' " *State v. Shabazz,* 145 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119, ¶ 18, quoting *Ohio Jury Instructions*, CR Section 409.01(4) (Rev. Aug. 17, 2011). And when we delve into questions of intent, circumstantial evidence is often all that we have. *State v. Adams*, 1st Dist. Hamilton No. C-180337, 2019-Ohio-3597, ¶ 9 ("We typically consider circumstantial evidence surrounding these events to evaluate intent, absent a defendant's admission.").

{¶17} Based on the evidence presented by the state, the jury could have reasonably concluded that Mr. Barnthouse did not intend to do the work or repay the remaining money to the Stoplers, and that he engaged in a deceptive act to deprive Mr. Stopler of the money, i.e., entering into the contract by which he promised to perform the work on the Stoplers' home. *See State v. Dalton*, 11th Dist. Portage No. 2008-P-0097, 2009-Ohio-3149, ¶ 32 (fact that defendant accepted payment, avoided contact with victim and performed minimally on the contract supported the inference that the defendant intended to deprive the victim of her money by deception).

{¶18} As to the weight of the evidence, Mr. Barnthouse references various facts in the record which he essentially contends negate intent to deceive. Among these is (1) the fact he did not seek out the Stoplers, (2) entering the written contract,

(3) providing his legitimate contact information, (4) accepting payment via check, (5) returning calls, and (6) returning a portion of the money. Notwithstanding the foregoing points, however, there was ample, credible evidence provided via the Stoplers' testimony to support the jury's conclusion that Mr. Barnthouse intended to deceive and took the money by deception. The jury was free to credit the Stoplers' testimony and other evidence as it saw fit and, as a reviewing court, we give substantial deference to that credibility assessment. *See State v. Groesser,* 5th Dist. Stark No. 2017CA00182, 2018-Ohio-2713, ¶ 48, 50-51 (noting that it is the providence of the trier of fact to choose between reasonable or conflicting views of the evidence, which the reviewing court may only disturb upon finding the trier of fact clearly lost its way); *State v. Wells,* 2d Dist. Champaign No. 2008 CA 6, 2009-Ohio-908, ¶ 51 (appellate court to give deference to credibility determinations of the trier of fact).

{¶19} Nothing in the record before us indicates that, in resolving any conflicts in the evidence, the jury clearly lost its way resulting in a manifest miscarriage of justice. Simply because the jury did not interpret or credit the evidence in the manner Mr. Barnthouse puts forth, does not mean that it lost its way; his conviction was supported by the weight of the evidence. For the foregoing reasons, we accordingly overrule Mr. Barnthouse's single assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**MOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:
The court has recorded its own entry this date.

9