[Cite as *State v. James*, 2022-Ohio-3244.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210598 |
| | | TRIAL NO. 21CRB-3166 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | : | |
| | : | |
| ANTOINE JAMES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 16, 2022

*Andrew W. Garth*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Connor E. Wood*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1}    Following a dispute about a game of cards, the trial court convicted defendant-appellant Antoine James of aggravated menacing.  On appeal, he alleges a violation of his Confrontation Clause rights and insists that his conviction ran counter to the manifest weight of the evidence.  However, the record at hand provides no basis for reversal, and we accordingly overrule his assignments of error and affirm the judgment of the trial court.

I.

{¶2}    The facts giving rise to this case occurred on New Year's Day 2021, when Mr. James and his cousin, William Chappell, attended a family get-together at another cousin's house.  The family gathered in the home to finish a keg of beer left over from an earlier gathering while watching some college football.  Six of the family members, including Mr. Chappell and Mr. James, played a game of cards that ultimately turned the lighthearted celebration into a family feud.

{¶3}    At some point during the card game, Mr. James became convinced that Mr. Chappell was cheating.  The tension boiled over when Mr. James grabbed the pot of money from the middle of the table (that he believed rightfully belonged to him) and stormed toward the exit.  Before he could leave, another cousin interceded and blocked his path.  Mr. Chappell testified that while Mr. James and the other cousin tussled near the front door, he avoided the confrontation and instead went to the dining room to pour himself a beer from the keg.  What happened next is a matter of some debate.

{¶4}    In Mr. Chappell's version, as he poured himself a drink, Mr. James approached him from behind and pressed a firearm into Mr. Chappell's right side,

announcing that "this is a robbery" and admonishing Mr. Chappell to hand over all his money. Unsatisfied by the $780 turned over by Mr. Chappell, Mr. James ordered him to surrender his wallet and disrobe. At this point, the owner of the home intervened and Mr. Chappell fled out the back door while Mr. James escaped through the front. Mr. Chappell claims that police were called and arrived on scene that night, although there is no record of any 9-1-1 call being made or of any police report being generated at the time of the incident.

{¶5} Defense witness Stephanie Chappell, Mr. James's mother, relayed a different version of what transpired. She testified that she attended the family gathering in question, and that Mr. Chappell and Mr. James became embroiled in a heated argument after Mr. James seized the pot of money from the table. Next, Mr. Chappell walked out to his vehicle and retrieved a firearm, which he brought back into the home. When he returned, he attempted to hand the gun to a different individual in a bid to escalate the altercation, but that person refused to take the weapon. Mr. James's mother insisted that, throughout the entire incident, Mr. James never had a firearm in his possession.

{¶6} Regardless, the next day, Mr. Chappell went to his local police department and filed charges against Mr. James for the robbery. The state charged Mr. James with aggravated menacing in violation of R.C. 2903.21, a first-degree misdemeanor. After a bench trial, the trial court returned a guilty verdict, finding Mr. Chappell's testimony convincing and credible. Mr. James now appeals, presenting two assignments of error.

{¶7} In his first assignment of error, Mr. James alleges that the trial court deprived him of his right to confront witnesses against him by limiting the scope of

defense counsel's cross-examination of Mr. Chappell. In his second assignment of error, Mr. James calls the credibility of Mr. Chappell into question, framing this as a manifest-weight challenge.

II.

{¶8} In his first assignment of error, Mr. James claims that the trial court abused its discretion by limiting the scope of defense counsel's cross-examination of the prosecution witness. "The Sixth Amendment's Confrontation Clause precludes a trial court from placing 'improper restrictions' on defense cross-examination." *State v. McAlpin*, Slip Opinion No. 2022-Ohio-1567, ¶ 151. Mr. James argues that the trial court improperly prevented defense counsel from questioning Mr. Chappell about a felonious assault charge filed against him on the same day of Mr. James's aggravated-menacing offense. He maintains that questioning Mr. Chappell about his felonious assault charge was necessary to explore whether the state established the elements of aggravated menacing, as well as a proper method of impeaching Mr. Chappell under Evid.R. 611(B).

{¶9} At the heart of this assignment of error lies the fact that when Mr. Chappell arrived at the police station the next day to press charges against Mr. James, the police arrested Mr. Chappell for an unrelated incident. During cross-examination, Mr. Chappell conceded to being indicted on charges stemming from another incident on the same date as the card game with Mr. James. Because that indictment involved a firearm, Mr. James sought to introduce it as evidence portraying Mr. Chappell as the armed aggressor on the night in question, rather than himself (consistent with his mother's account). The trial court examined the indictment and found it "absolutely

4

not related" to the aggravated-menacing charge. Thus, the trial court refused to allow defense counsel to pursue this line of questioning with Mr. Chappell.

{¶10} Mr. James contends that foreclosing cross-examination on the unrelated indictment violated his constitutional confrontational rights. "Cross-examination of a witness is a matter of right, but the 'extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.' " *State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993), quoting *Alford v. United States*, 282 U.S. 687, 691, 694, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931). The Confrontation Clause may preclude improperly restricted cross-examination, but it does not afford Mr. James the right to cross-examine witnesses in any manner, on any topic that he wishes. *McAlpin* at ¶ 151 ("[T]he Confrontation Clause 'guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish.' "), quoting *Delaware v. Fensterer*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). We see no basis for concluding that the trial court abused its discretion by limiting the scope of cross-examination here.

{¶11} As a threshold matter, while defense counsel did proffer Mr. James's police report, it is not clear whether she proffered Mr. Chappell's indictment before the trial court. In any case, the indictment is not in the record on appeal before us now. Absent that, we must presume that the trial court correctly analyzed the indictment, a conclusion bolstered by the record. *See Olson v. Newhouse*, 9th Dist. Summit No. 24755, 2010-Ohio-1349, ¶ 20 ("The record on appeal must contain the transcripts of proceedings held in the trial court as well as papers and exhibits filed below. * * * In

5

the absence of portions of the record necessary for our review, we must presume regularity in the trial court's proceedings and affirm its ruling.").

**{¶12}** In any event, the transcript reflects that the trial court conducted a careful review of Mr. James's police report and Mr. Chappell's indictment before determining that the two incidents were unrelated because Mr. James was not named as a victim in the case or otherwise mentioned in the indictment. And as the trial court pointed out, proving that Mr. Chappell may have been carrying a gun within the same 24-hour period does not disprove that Mr. James may have produced a gun during the card game. Both things can be true. Despite being given several opportunities, defense counsel failed to demonstrate a relevant connection between the two offenses before the trial court.

**{¶13}** Due to the determination that the two charges were unrelated, it fell within the trial court's discretion to prevent cross-examination of the facts underlying this charge. *See Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253. The trial court's limitations on defense counsel's cross-examination of Mr. Chappell strike us as reasonable in light of the record at hand, as Mr. James was not "prohibited from engaging in otherwise appropriate cross-examination." *See McAlpin*, Slip Opinion No. 2022-Ohio-1567, at ¶ 152, quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

**{¶14}** Furthermore, under Ohio law, subject to few exceptions, "the credibility of a witness may be attacked by proof of conviction of a crime but not by proof of indictment." *State v. Caldwell*, 2d Dist. Greene No. 2013-CA-76, 2015-Ohio-2551, quoting *State v. Hector*, 19 Ohio St.2d 167, 168, 249 N.E.2d 912 (1969), paragraph five of the syllabus. It was therefore proper for the trial court to foreclose defense counsel's

cross-examination of Mr. Chappell on this issue for impeachment purposes as well. Defense counsel failed to lay an appropriate foundation on this point, neglecting to ask Mr. Chappell even the most basic foundational question of whether he had a gun in his possession the night of the offense. We need not explore any potential exceptions to the general rule in light of the lack of a necessary foundation. Accordingly, we overrule Mr. James's first assignment of error.

III.

{¶15} Next, we turn to Mr. James's claim that his conviction ran counter to the manifest weight of the evidence. In reviewing weight-of-the-evidence challenges, we sit as a "thirteenth juror," *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), and "review the entire record, weigh the evidence and reasonable inferences, [and] consider the credibility of the witnesses." *State v. Barnthouse*, 1st Dist. Hamilton No. C-180286, 2019-Ohio-5209, ¶ 6. We will only reverse if the trial court " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Sipple*, 2021-Ohio-1319, 170 N.E.3d 1273, ¶ 7 (1st Dist.), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶16} Mr. James believes that the trial court accorded too much weight to the testimony of Mr. Chappell. He portrays Mr. Chappell's testimony as punctuated by inconsistencies regarding the date on which he reported Mr. James's offense to the police. Mr. James also refers to the fact that Mr. Chappell admittedly consumed a large quantity of marijuana on the night of the offense. While there may be good reason to doubt Mr. Chappell's testimony, considering these facts, Ohio law is clear that " [w]hen conflicting evidence is presented at trial, [an adjudication] is not against

the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' " *In re A.K.*, 1st Dist. Hamilton No. C-210178, 2021-Ohio-4199, ¶ 26, quoting *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29.

**{¶17}** Finally, Mr. James highlights the disparities between the testimony of Mr. Chappell and that of his mother, who testified that Mr. James never possessed a firearm on the night of the offense. The trial court had discretion to disregard Mr. James's mother's testimony considering potential bias given that her son was on trial. After a comprehensive review of the record, we see nothing to cast doubt on the integrity of the conviction. Accordingly, we overrule Mr. James's second assignment of error challenging the weight of the evidence.

\* \* \*

**{¶18}** In light of the foregoing analysis, we overrule both of Mr. James's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.