[Cite as *State v. Trentman*, 2024-Ohio-5661.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240355 |
| | | TRIAL NO. B-2303744 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| CHRISTOPHER TRENTMAN, | : | *O P I N I O N* |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 4, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Glaser Law Office* and *Angela J. Glaser*, for Defendant-Appellant.

**KINSLEY, Judge.**[1]

**{¶1}** Defendant-appellant Christopher Trentman appeals from the trial court's judgment convicting him, following a bench trial, of theft by deception. In his sole assignment of error, Trentman challenges the sufficiency and manifest weight of the evidence. After a careful review of the record, we affirm Trentman's conviction.

### *Factual and Procedural History*

**{¶2}** On August 10, 2023, Trentman was indicted for one count of theft by deception in violation of R.C. 2913.02(A)(3), a felony of the fifth degree. The indictment alleged that, on or about April 30, 2023, Trentman deprived the complaining witness of money obtained for service by deception.

**{¶3}** On April 25, 2024, the matter proceeded to a bench trial. At trial, the State called the complaining witness and Officer Genesis Steele to testify.

**{¶4}** The complaining witness testified that she was introduced to Trentman through her landscaper, with whom she had been doing business for ten years. She explained that the landscaper had recommended Trentman to install a fence at her new home. On April 13, 2023, the two met at her home and discussed the project. Following that initial meeting, Trentman sent her a series of text messages that were introduced as State's exhibit 1. The text messages detailed the cost of labor and materials and indicated that 50 percent of the total would be due upfront.

**{¶5}** The complaining witness testified that, on April 30, 2023, she wrote Trentman a check for $2,625—50 percent of the project cost—and that Trentman cashed the check on May 1, 2023. The State introduced the negotiated check as State's exhibit 2. The complaining witness further testified that she did not hear from

---

[1] I acknowledge and thank judicial attorney Saria Lattimore for her assistance in the preparation of this opinion.

Trentman during the month of May, nor did he begin work on the project. She explained that she reached out to Trentman several times in May but was unable to contact him. As a result, in June, she contacted her landscaper for assistance. According to the complaining witness, the landscaper contacted Trentman, who indicated that he had the necessary materials to complete the job and planned to perform the work on June 6, 2023. But Trentman never arrived on June 6th.

**{¶6}** After Trentman did not follow through, the complaining witness again contacted him about the fence. Trentman explained that he was still waiting on some materials and that he planned to begin work on June 26, 2023. But again he did not arrive as scheduled. The complaining witness once again contacted him, and he said that he was in the hospital and planned to come on June 29th. That never happened either.

**{¶7}** The complaining witness testified that, at that point, she requested receipts for the materials Trentman claimed to have purchased. On July 3, 2023, she specifically told Trentman, "I need you to show me something that you have materials. I need you to show me something that you were in the hospital for us to continue this conversation." But Trentman never provided the proof she requested. The complaining witness then contacted the police.

**{¶8}** On cross-examination, the complaining witness admitted that when she spoke with Trentman on June 26th, she explained that if he did not come on June 29th and complete the work within ten days, then she would like a refund. She also testified that her understanding was that the project would be completed within ten days from when she paid the deposit. She testified that Trentman had provided her with his address; when she looked up his address on the county auditor's website, she discovered that the home he lived in was owned by a church.

**{¶9}** Steele, a detective for the Cincinnati Police Department, explained that she received information from the complaining witness about her failed transaction with Trentman, spoke with fellow officers, and then decided to charge Trentman with theft by deception.

**{¶10}** On cross-examination, Steele testified that she attempted to contact Trentman several times. She explained that Trentman eventually returned her call, and they spoke on the phone for approximately 30 minutes. Trentman was upset that a charge had been filed and explained his side of the story. Trentman told Steele that he was not trying to deceive the complaining witness and that he could give her the money back. Steele explained that once Trentman was made aware of the charge, he turned himself in.

**{¶11}** Following Steele's testimony and the admission of State's exhibits 1 and 2, the State rested its case. Defense counsel made a Crim.R. 29 motion for an acquittal, which was denied. Defense counsel then called Trentman to testify on his own behalf.

**{¶12}** Trentman testified that he installs fences and performs other handyman work for a living. He testified that he was not very organized when it came to his business and did not keep receipts. He relayed that he and his family were denied a loan for the purchase a home because he was unable to show his business records.

**{¶13}** Trentman testified that, when he first heard from the complaining witness in April 2023, he was very busy. But the landscaper continuously asked him to do the job at the complaining witness's home, so he agreed.

**{¶14}** Trentman attempted to explain the basis for the delays in the fencing project. For one, the job was more difficult than usual, because the homebuilder used nonstandard materials. For another, his brother passed away. He also explained that he had problems obtaining the materials he needed. In addition, Trentman testified

that he was hospitalized in June, but planned to complete the work after being discharged. He testified that he did not feel comfortable disclosing his diagnosis to the complaining witness, so he never told her about his medical condition. Trentman acknowledged that he never turned over any receipts for the building materials. He also admitted that he missed deadlines and had poor communication.

{¶15} With regard to the initial deposit he accepted from the complaining witness, Trentman testified that he returned $1,800 to his first attorney at his arraignment with the idea that his attorney would provide the money to the complaining witness. On cross-examination, Trentman testified that he did not directly give the money back to the complaining witness because he was not allowed to have any contact with her.

{¶16} The trial court found Trentman guilty of theft by deception under R.C. 2913.02(A)(3). In doing so, the trial court specifically found Trentman's testimony not to be credible and noted, "[I]t's been a year, and he has not returned the money, given her the property he purchased with her money, or done the work in this case."

{¶17} On May 23, 2024, the trial court sentenced Trentman to two years of community control. The trial court also ordered restitution in the amount of $2,650 and remitted court costs, fines, and fees.

{¶18} Trentman now appeals.

### Sufficiency and Manifest Weight

{¶19} In his sole assignment of error, Trentman argues that his conviction was based on insufficient evidence and against the manifest weight of the evidence.

{¶20} To determine whether a conviction is supported by sufficient evidence, we inquire "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

5

crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *see State v. Curry*, 2020-Ohio-1230, ¶ 11 (1st Dist.).

{**¶21**} When reviewing whether Trentman's conviction is against the manifest weight of the evidence, we sit as the "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "A verdict can be against the manifest weight of the evidence even though legally sufficient evidence supports it." *State v. Myers*, 2018-Ohio-1903, ¶ 140. To evaluate a manifest-weight challenge, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of all witnesses. *State v. McKelton*, 2016-Ohio-5735, ¶ 328. The panel questions whether the trier of fact clearly lost its way in resolving evidentiary conflicts and rendered a verdict that embodies a manifest miscarriage of justice. *State v. Wilks*, 2018-Ohio-1562, ¶ 52.

{**¶22**} Ohio's theft-by-deception statute, R.C. 2913.02(A)(3), states, "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: . . . (3) By deception." "For matters involving theft 'by deception,' a conviction under R.C. 2913.02(A)(3) requires the state to establish that the defendant engaged in a deceptive act to deprive the victim of possession of property or services." *State v. Barnthouse*, 2019-Ohio-5209, ¶ 12 (1st Dist.), citing *State v. Edmondson*, 2001-Ohio-210. Where a contract for services is at issue, the prosecution can satisfy its burden by demonstrating that the defendant accepted money under the contract without either the intent to perform or to repay the funds. *Id.* at ¶ 13. The performance of a significant amount of work under the contract demonstrates intent to perform, where minimal or no work shows the opposite. *Id.* Moreover, "[i]ntent may be inferred from the circumstances surrounding the crime. Because intent dwells in the mind of the

6

accused, an intent to act can be proven from the surrounding facts and circumstances." (Cleaned up.) *State v. Fasino*, 2015-Ohio-2265, ¶ 15 (8th Dist.).

**{¶23}** Trentman argues that the State failed to establish that he acted with the requisite intent for a theft-by-deception conviction. In fact, he contends that the evidence presented at trial demonstrated that he intended to perform the job at the complaining witness's house. But the State presented sufficient evidence to support the trial court's judgment. Both the complaining witness and Trentman testified that there was no communication between the parties for at least a month after Trentman cashed the initial $2,600 deposit check. Trentman himself acknowledged during his testimony that he did not communicate with the complaining witness the way that he should have, and the complaining witness testified that she had reached out to him several times during May 2023 with no reply. When communication did resume in June 2023, Trentman made several false promises to begin work, but he never showed up to complete the job, returned the complaining witness's money, or provided the materials that he claimed to have purchased. Nor did he provide the receipts the complaining witness requested. In fact, there was no evidence at all that Trentman had in fact purchased any of the materials he claimed to have acquired.

**{¶24}** The fact that Trentman accepted money for services and then never performed under the contract is circumstantial evidence of his intent. *See Barnthouse*, 2019-Ohio-5209, at ¶ 13 (1st Dist.). Sufficient evidence therefore supported his conviction.

**{¶25}** In addition to challenging the sufficiency of the evidence, Trentman also invites us to reweigh the evidence and to determine that the trial court clearly lost its way in finding that the State proved the element of intent. However, nothing in the record supports this conclusion. Trentman testified that he failed to properly

communicate, failed to provide receipts for the materials that he claimed to have purchased, failed to deliver the materials that he claimed to have purchased, failed to begin the job, failed to complete the job, and failed to return the complaining witness's money. From the evidence presented at trial, we cannot say that the trial court erred in finding Trentman's testimony not to be credible or interpreting the evidence in an unfavorable manner towards Trentman.

### *Conclusion*

**{¶26}** Accordingly, because Trentman's conviction for theft by deception was supported by sufficient evidence and not against the manifest weight of the evidence, we overrule Trentman's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.