[Cite as *State v. Hudson*, 2025-Ohio-3057.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO                   :          APPEAL NO.   C-240554
                                           TRIAL NO.    B-2305953
    Plaintiff-Appellee,    :

  vs.                        :

                                           *JUDGMENT ENTRY*
TREVON HUDSON                   :

    Defendant-Appellant.   :

                                :

                                :

                                :


This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 8/27/2025 per order of the court.**


**By:**_____
      **Administrative Judge**

[Cite as *State v. Hudson*, 2025-Ohio-3057.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                                :        APPEAL NO.   C-240554
                                                       TRIAL NO.    B-2305953
      Plaintiff-Appellee,              :

  vs.                                        :
                                                                *O P I N I O N*
TREVON HUDSON,                               :

      Defendant-Appellant.            :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 27, 2025


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Jon Vogt*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

Schuh & Goldberg, LLP, and *Brian T. Goldberg,* for Defendant-Appellant.

**NESTOR, Judge.**

**{¶1}** After a middle-school security officer, defendant-appellant Trevon Hudson, made an inappropriate sexual remark to 12-year-old D.T., he was convicted of importuning. Arguing that the State did not present sufficient evidence that he committed the offense and that the record does not credibly establish that he committed the offense, he appeals, asserting a sole assignment of error.

**{¶2}** Because his conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, we overrule his sole assignment of error and affirm the judgment of the trial court.

## I. Factual and Procedural History

**{¶3}** On November 20, 2023, 12-year-old D.T., was a middle-school student in Cincinnati. Hudson worked at D.T.'s school as a security guard and coach, so she was somewhat familiar with him. However, interaction between the two was limited until the day in question. That day, D.T. had to go to the principal's office because she saw a fight between two other students and the administration wanted an eyewitness account of what happened.

**{¶4}** While waiting in the principal's office, Hudson approached D.T. and asked for her phone number, as he explained, to discuss playing basketball. D.T., believing Hudson was sincere, saw no issue and gave him her number.

**{¶5}** That same afternoon, Hudson texted D.T. two separate emojis. One text had two muscle-flexing emojis and the other had an emoji of hands making a heart shape. He did not mention basketball in either text. Afterwards, D.T. went back to class, and Hudson randomly showed up. While she was in another class, Hudson texted her again asking, "What class you in?"

**{¶6}** At some point, D.T. and another girl left that class to go to the restroom.

Hudson claims he heard a commotion and responded because students were misbehaving. When the two girls came out of the restroom, Hudson told D.T. to "come here." D.T. testified that when she went over to Hudson, he got close to her ear and said, "Can I eat you out." D.T. said that she responded, "[N]o your mouth is probably dirty," and he responded, "I guarantee you it's not."

{¶7} Hudson contends that D.T. fabricated this exchange. Hudson testified that instead he said, "[Y}ou need to tighten up, don't be f***ing goofy," because he thought she was misbehaving.

{¶8} The school surveillance video confirms Hudson leaning in to speak to D.T. as she came out of the restroom. But the video does not have any audio to confirm the verbal exchange. After this disputed interaction, D.T. returned to class.

{¶9} D.T. talked to her older sister, also a student at the school, and the two reported what had happened to a member of the school's faculty. This led D.T., her sister, and the faculty member to the assistant principal. The assistant principal took D.T. and her sister to his office, and they contacted their mother.

{¶10} The assistant principal performed his own investigation of the incident. He began by verifying Hudson's phone number and looking through D.T.'s phone to match the number with Hudson's. He then watched the surveillance footage to verify there was an interaction between the two. After his investigation, he called the school's assigned resource officer.

{¶11} At trial, Hudson testified on his own behalf. He testified that part of his job as a security guard was to reach out to students and get to know them. Even though Hudson admitted that he did not have a preexisting relationship or friendship with D.T., he claimed that he did know who she was from seeing her around the school. He also admitted that he was the boys' basketball coach, not the girls'. Further, he

4

testified that he did not always communicate with students by phone, but when he did it was just to see "if they needed help or anything."

**{¶12}** As for the emojis, Hudson claimed that they were meant to express support and unity. He also said that the muscle emoji referred to him being called "the muscle" by some students, and he was letting D.T. know it was him texting her. He concluded that he cupped his hand around D.T.'s ear while speaking to her because he was telling her to correct her behavior and he did not want to embarrass her in front of other students.

**{¶13}** On December 20, 2023, Hudson was indicted for one count of importuning in violation of R.C. 2907.07(A), a felony of the third degree. After a bench trial, Hudson was found guilty and sentenced to three years of community control and ordered to enter and complete the River City Correctional Program. In addition, Hudson was classified as a Tier I sex offender.

**{¶14}** Hudson now appeals and asserts a single assignment of error arguing that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

## II. Analysis

### A. Sufficiency of the Evidence

**{¶15}** In his first issue presented for review, Hudson asserts that his conviction is not supported by sufficient evidence. "To determine whether a conviction is supported by sufficient evidence, we inquire 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Trentman*, 2024-Ohio-5661, ¶ 20 (1st Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

5

**{¶16}** In pertinent part, Ohio's importuning statute provides that "[n]o person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person." R.C. 2907.07(A). D.T. testified that Hudson offered to perform oral sex on her. This comment to D.T. constituted solicitation to engage in sexual activity. In addition, D.T. testified that she was 12 years old at the time of the solicitation, which satisfied the victim-age requirement in the statute.

**{¶17}** Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find the essential elements of importuning were proven beyond a reasonable doubt.

### B. *Manifest Weight of the Evidence*

**{¶18}** In his second issue presented for review, Hudson asserts that his conviction for importuning was against the manifest weight of the evidence. When reviewing the weight of the evidence, appellate courts must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and decide whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Gibson*, 2023-Ohio-1640, ¶ 12 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Also, competing evidence is not enough to say that a court's decision was against the manifest weight of the evidence. *In re D Children*, 2025-Ohio-1517, ¶ 27 (1st Dist.). Convictions "may only be reversed under a manifest [] weight review in exceptional cases where the evidence weighs heavily against the conviction." *State v. Harper*, 2025-Ohio-2059, ¶ 18 (1st Dist.), citing *State v. Sexton*, 2025-Ohio-718, ¶ 21 (1st Dist.).

**{¶19}** Here, the record contains evidence of a middle-school security guard texting a 12-year-old female student multiple times. While this behavior is

6

inappropriate in almost every circumstance, it is even more so in this context. Hudson claims that he reached out to D.T. about basketball, but he is not the girls coach. The text messages did not reference basketball. Having no previous relationship with D.T. outside of seeing her in the hallway, he texted her the hands-creating-a-heart emoji, a muscle-flexing emoji, and asked her what class she was in before he randomly appeared in her classroom.

{¶20} Also, as confirmed by surveillance video, he stood outside of the girls' restroom and waited for D.T. Other girls walked out of the restroom and around the hall and he did not interact with them. As soon as D.T. and her friend exited the restroom, he called her over, cupped his hand around her ear, and, as she testified, he asked her, "Can I eat you out?" The factfinder was free to believe this statement over Hudson's self-serving testimony. During her testimony, there was nothing presented that called D.T.'s credibility into question.

{¶21} After reviewing the entire record, we cannot hold that the trier of fact clearly lost its way. In sum, we have a middle-school security officer who admitted to texting a 12-year-old girl at the school. He showed up to her class and waited for her in the hallway outside of the restroom. Once she left the restroom, he motioned her towards him, cupped his hand around her ear, and invited her to engage in sexual activity.

{¶22} D.T. immediately went to her sister and a faculty member and reported the event. Hudson's argument that D.T. fabricated the story, and his assertion that he did not make an inappropriate sexual remark is not enough to render the court's decision against the manifest weight of the evidence. This case is not the exceptional case in which evidence weighs heavily against the conviction. Therefore, we hold that Hudson's conviction is not against the manifest weight of the evidence.

**{¶23}** Because Hudson's conviction was supported by sufficient, credible evidence, and was not against the weight of the evidence, we overrule his sole assignment of error.

### *III.* *Conclusion*

**{¶24}** Based on the foregoing, we overrule the assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**BOCK**, **P.J.**, and **MOORE, J.,** concur.