[Cite as *State v. Evans*, 2023-Ohio-1879.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. 22CA31 |
| v. | : | |
| QUINTON EVANS, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | **RELEASED 6/02/2023** |

_____
APPEARANCES:

R. Jessica Manungo, Assistant State Public Defender, Office of the Ohio Public Defender, Columbus, Ohio, for appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Pamela C. Wells, Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.
_____
HESS, J.

{¶1}   Quinton Evans appeals his conviction for possession of a deadly weapon while under detention. For his first assignment of error, Evans contends that the trial court abused its discretion when it overruled his objections to a state witness's testimony. He argues that the trial court improperly allowed the state to question an investigator about her experience investigating possession of a deadly weapon cases that involved murders. He contends that this confused and prejudiced the jury into thinking that a murder investigation had some connection to his case. He also argues that it prejudiced the jury into thinking that the sharpened metal scissor blade he possessed was a deadly weapon. We find that there was no likelihood of jury confusion over whether Evans's case involved murder. None of the witnesses testified about a murder and the trial court gave curative jury instructions regarding

this. The testimony about whether the investigator had experience in investigating deadly weapon possession cases involving murder is precisely the type of probative and prejudicial – but not *unfairly* prejudicial – testimony the evidence rules allow. The evidence makes it more likely that the investigator knew what types of weapons were capable of inflicting death – an element of the state's case. We overrule Evans's first assignment of error.

{¶2} In his second and third assignments of error, Evans contends that his conviction for possession of a deadly weapon was not supported by sufficient evidence and was against the manifest weight of the evidence. He argues that there was insufficient evidence that he possessed a "deadly weapon" because his "small, encased half-scissors that he had in his pocket did not qualify as a deadly weapon." He argues that a deadly weapon must be capable of inflicting death, but the broken half scissor was wrapped in several pieces of cloth with only the blade tip exposed. Therefore, he argues, that as wrapped, the sharpened metal half-scissor was not able to cut or stab anyone to death. Similarly, he argues that his conviction was against the manifest weight of the evidence because the state did not provide substantial evidence showing that the broken half scissor wrapped in cloth could inflict death. We find that Evans's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. The state presented sufficient evidence through the testimony of its witnesses and the admission of the weapon to allow any rational trier of fact to find all the essential elements of the crime proven beyond a reasonable doubt. And after reviewing the entire record, we find that the jury did not clearly lose its way or create a miscarriage of justice such that reversal of the conviction is necessary. We overrule his second and third assignments of error.

{¶3} Finally, Evans contends that the Reagan Tokes Act violates the Ohio and

United States Constitutions, thus his sentence is contrary to law. He concedes he did not challenge the constitutionality of the Reagan Tokes Act at the trial level and has waived it. However, he asks us to review it under the plain error standard of review. We reject his argument and find that the Reagan Tokes Law is constitutional. We overrule his fourth assignment of error.

{¶4} We affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶5} In December 2021, a Ross County Grand Jury returned an indictment that charged Evans with one count of possessing a deadly weapon while under detention, having been convicted of rape in the Cuyahoga County Court of Common Pleas in 2019 and subsequently incarcerated at the Ross Correctional Institution. The indictment stated that the deadly weapon was a four-inch homemade shank and that his possession of it was in violation of R.C. 2923.131, a second-degree felony. Evans entered a not guilty plea.

{¶6} The case proceeded to a jury trial which produced the following evidence. Officer Gerald Webb, a correctional officer at the Ross Correctional Institution, testified that he went to speak to Evans about the policy concerning religious materials. Officer Webb testified that the prison mail room and the prison chaplain had previously explained the procedures for obtaining religious material to Evans. But, Evans did not want to follow those procedures and became very upset with Officer Webb when he attempted to explain them. After Evans became irate, Officer Webb called in Officer Samuel Borland to assist him. Officer Webb also placed Evans in handcuffs. Evans verbally threatened Officer Webb by telling him that the handcuffs were not going to hold him and that he would come after Webb after he got out of the cuffs.

{¶7}    Officer Samuel Borland testified that he worked at the prison as a correctional officer and was called to take Evans to the captain's office. On the walk to the captain's office Evans told Officer Borland that he had a knife in his pocket. Officer Borland told Evans that he would get it from Evans when they reached the captain's office. When they reached the captain's office, Evans told Officer Borland that the knife was in his left pants pocket and Borland retrieved it. The state presented an object to Officer Borland at trial and asked him to identify it. Officer Borland testified that it was the "shank" or "knife" that he removed from Evans's pants pocket.  Borland described it as "a broken pair of safety scissors with a drop point ground into it so it will penetrate the skin." He explained that a drop point is "a flat tip on a pair of safety scissors, this just brings it down to a sharp edge so it can penetrate into skin." Officer Borland testified that it was wrapped in a torn section of bed sheet to "give it a little more girth and make it into a handle." Officer Borland testified that the bed sheet "would make it easier to use because it has something more substantial to grab onto." When asked on cross examination if the bed sheet would make it more difficult to penetrate, Borland responded, "No." Evans's defense counsel pursued further:

> Q. So looking at that wrapping and you held onto it tight with you [sic] hand, it seems to be a thick wrapping; is that correct?
>
> A. Yes.
>
> Q. It's not just like a single ply sheet over it?
>
> A. No.
>
> Q. And you can only see just the tip of that blade; is that correct?
>
> A. Correct, yes.
>
> Q. So you don't believe though that that wrapping would hinder it entering any further than that tip?

A. No, Ma'am.

{¶8}    Trooper Sherry Wells testified that she is employed as a state trooper with the Ohio State Highway Patrol and works in the investigative unit that handles criminal investigations on state owned or leased property, which includes the prisons in Ross County, Ohio. Trooper Wells had been in law enforcement for 32 years and in the investigation unit for 23 years. She performs investigations daily at the Ross Correctional Institution, which is a detention facility for convicted felons. Trooper Wells testified that she was the investigator handling the Evans investigation and she had reviewed the officers' reports and inspected the object found on Evans. She described it as "what is known by the prison terms as a shank which is a homemade knife." Trooper Wells described the object as "a pair of scissors, half of a scissors. Instead of having the two handles, it's been broken apart. So this is one handle and blade, so one side of a pair of scissors. It has been altered and made into a point." She also explained that the cloth around it appeared to be a ripped bed sheet, torn into strips, and wrapped to make a handle. The loops would be used to strap across the hand so that the inmate would not lose it and could hang onto it. The metal is hard, sharpens well, and does not bend easily. Trooper Wells testified, "It's already rounded so all they have to do is put the point to it so once it is gripped in the hand, it's very easily made into a stabbing or a cutting style shank. They can do either with this."

{¶9}    When asked about her experience investigating crimes at the Ross Correctional Institution, Trooper Wells testified that she had spent approximately eight to ten years investigating crimes there. Each year she investigates several cases involving inmates in possession of deadly weapons, including deadly weapon possession cases involving murder investigations:

Q. Have any of the investigations involving possession of deadly weapon under detention been murder investigations?

A. Yes.

[Defense Counsel]. Objection.

**{¶10}** Defense counsel argued that the question was irrelevant and prejudicial. The trial court overruled the objection on the ground that the state could establish Trooper Wells's experience with instruments capable of inflicting death and gave the jury the following clarifying instruction:

> All right. Ladies and gentlemen, the objection is overruled. However, I am going to instruct the jury that the questioning - - to be clear, [the prosecutor] is questioning with regard to this witness' experience in investigations and weapons. However, there is no allegation that this defendant murdered or harmed anyone and that is not what this case is about so I want to make a clear distinction to that.

The prosecutor proceeded:

> Q. Now Trooper Wells, throughout your career and based on your training and experience, is the weapon that was found in the defendant's possession on June 1st of 2021 a deadly weapon?
>
> A. Yes, Ma'am. It very easily is a deadly weapon in multiple forms.
>
> Q. Is it capable of inflecting death?
>
> A. Yes. Like I said, this can both stab and/or cut so it is a very dangerous weapon because of the harshness - - the stiffness of the metal, that makes it very likely that it could cause harm and death.

**{¶11}** Trooper Wells also testified that she obtained a certified copy of Evans's 2019 rape conviction and interviewed Evans about the weapon. Evans admitted he possessed the weapon, he described it to her, and he told her he purchased it with the end already sharpened. Evans also admitted that he knew that he was not allowed to have a weapon in the institution.

**{¶12}** The jury found Evans guilty and the trial court sentenced him to a minimum term of seven years with a maximum indefinite term of ten and a half years to be served consecutive to the prison sentence Evans was currently serving for rape. Evans appealed.

## II. ASSIGNMENTS OF ERROR

**{¶13}** Evans assigns four errors for review:

I. The trial court abused its discretion when it overruled defense counsel's objections to the state's questions about murder investigations and admitted unnecessary evidence to the prejudice of Quinton Evans. R.C. 2923.131(B); Evid.R. 401, 402, and 403; T.p. 81-83.

II. Quinton Evans' conviction for possession of a deadly weapon while under detention is not supported by sufficient evidence. Fifth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution. R.C. 2923.131(B). (T.p. 83-84, 111; August 16, 2022 Judgment Entry of Sentence.)

III. Quinton Evans' conviction of possession of a deadly weapon while under detention is against the manifest weight of the evidence, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). R.C. 2923.131(B). (T.p. 83-84, 111; August 16, 2022 Judgment Entry of Sentence.)

IV. Because the Reagan Tokes Act violates the Ohio and United States Constitutions, Quinton Evans' sentence is contrary to law. R.C. 2953.08(G)(2); Sixth and Fourteenth Amendments of the United States Constitution; Articles I, II, and III of the United States Constitution; Article I, Section 5, 10 and 16 of the Ohio Constitution; *City of S. Euclid v. Jemison*, 28 Ohio St.3d 157, 158-59, 503 N.E.2d 136 (1986).

## III. LEGAL ANALYSIS

A. Admission of Testimony about Murder Investigations

{¶14} Evans asserts that the trial court abused its discretion in allowing Trooper Wells to testify about her involvement in possession of deadly weapon cases that involved murder investigations in various correctional institutions. He contends that this testimony had no relevance to his case and only inflamed and confused the jury. He argues that the trial court's curative instructions were not sufficient to address the prejudicial aspects of the testimony.

1. Standard of Review

{¶15} "The admission or exclusion of evidence generally rests within a trial court's sound discretion." *State v. McCoy,* 4th Dist. Pickaway No. 19CA1, 2020-Ohio-1083, ¶ 20. "Thus, absent an abuse of discretion, an appellate court will not disturb a trial court's ruling regarding the admissibility of evidence." *Id.* An abuse of discretion is "an unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

2. Evidentiary Analysis

{¶16} Generally, relevant evidence is admissible. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Evidence which is not relevant is not admissible." Evid.R. 402. Relevant evidence is generally admissible. Evid.R. 402. However, Evid.R. 403(A) provides that relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶17} Unfair prejudice is not damage to the defendant's case which " 'results from the

legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.' " *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 89, quoting *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986). "[I]f the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect." *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 743 N.E.2d 890 (2001), quoting *Weissenberger's Ohio Evidence*, Section 403.3 (2000).

{¶18} Evid.R. 403(A) "manifests a definite bias in favor of the admission of relevant evidence," as "[t]he dangers associated with the potentially inflammatory nature of the evidence must *substantially* outweigh its probative value before the court should reject its admission." (Emphasis sic.) *State v. Irwin*, 4th Dist. Hocking Nos. 03CA13 & 03CA14, 2004-Ohio-1129, ¶ 22. "Thus, '[w]hen determining whether the relevance of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission.' " *McCoy*, 4th Dist. Pickaway No. 19CA1, 2020-Ohio-1083, at ¶ 21, quoting *State v. Lakes*, 2d Dist. Montgomery No. 21490, 2007-Ohio-325, ¶ 22; *State v. Allen*, 4th Dist. Ross No. 21CA3736, 2022-Ohio-1180, ¶ 21-24.

{¶19} Here, when the state questioned Trooper Wells about her experience in prison investigations involving possession of a deadly weapon that involved murders, it was relevant to her knowledge of the types of weapons that are capable of inflicting death. Because Wells had been involved in multiple deadly weapon possession cases, including those that resulted in death, she had prior experience that gave her knowledge about which weapons were

capable of inflicting death, an element of the crime and relevant to the state's case. Despite Evans's contentions, there was no danger of unfair prejudice because there was no basis for any jury confusion. There was no testimony that Evans's possession of the sharpened metal scissor blade resulted in murder. Both correctional officers testified that, other than a verbal threat to Officer Webb, Evans cooperated with them and did not use the weapon on them, much less physically threaten them with it. The trial court's curative instructions also instructed the jury that the question was probative of Trooper Wells's investigative experience. He assured them there was no allegations that Evans murdered or harmed anyone. "A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." *State v. Ludwick,* 4th Dist. Highland No. 22CA9, 2023-Ohio-1113, ¶ 20.

**{¶20}** Evans contends that the question was prejudicial because it "prejudiced the jury into thinking that Mr. Evans indeed possessed a deadly weapon – a weapon that can kill, a weapon that can cause death." But this is not *unfair* prejudice, rather it is damage to the defendant's case which results from the legitimate probative force of the evidence. *State v. Lang,* 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 89. Not only did Trooper Wells have decades of experience in investigating prison crimes, but she conducted multiple yearly investigations into possession of deadly weapon cases, including some that resulted in death. This gives her testimony that the weapon here was capable of inflicting death "legitimate probative force."

**{¶21}** We overrule Evans's first assignment of error.

### B. Sufficiency & Manifest Weight of the Evidence

**{¶22}** In his second and third assignments of error, Evans contends that his conviction was not supported by sufficient evidence and was against the manifest weight of

the evidence. He argues that "the small, encased half-scissors that he had in his pocket did not qualify as a deadly weapon." Evans acknowledges and cites a number of cases in which sharpened toothbrushes, sharpened metal objects wrapped in cloth or athletic tape, and two toothbrushes wrapped around a pencil were all considered deadly weapons. However, he argues that the sharpened metal shank he possessed was only four inches in length and was wrapped in cloth so that only the sharpened metal blade was exposed. He contends, "Because only the flat or blunt tip of the blade was exposed, and the rest of the scissors was securely wrapped in thick cloth, the wrapped-up scissors was not able to cut or stab anyone to death."

{¶23} Evans also contends his conviction was against the manifest weight of the evidence because the state did not provide substantial evidence showing that the sharpened metal scissor blade wrapped almost entirely in cloth was a deadly weapon. Even though the officers testified about how the wrapped sharpened metal scissor blade could be used effectively in multiple ways as a deadly weapon, Evans argues that "the state did not show or prove that the mere flat tip of that blade could inflict or cause death * * * at no time did the state demonstrate how this instrument * * * was sharp enough to cut or deeply penetrate the skin and cause death."

1. Standard of Review

a. Sufficiency

{¶24} "When a court reviews the record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Bennington,* 2019-Ohio-4386, 148 N.E.3d 1, ¶ 11 (4th Dist.).

**{¶25}** An appellate court must construe the evidence in a "light most favorable to the prosecution." *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). Further, "[t]he court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 22, citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132; *State v. Lodwick*, 2018-Ohio-3710, 118 N.E.3d 948, ¶ 9 (4th Dist.). Thus, "a reviewing court is not to assess 'whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.'" *State v. Davis*, 4th Dist. Ross No. 12CA3336, 2013-Ohio-1504, ¶ 12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997) (Cook, J., concurring). Rather, a reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

b. Manifest Weight

**{¶26}** In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary. *State v. Thompkins*, 78 Ohio St.3d 380,

387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. To satisfy this test, the state must introduce substantial evidence on all the elements of an offense, so that the jury can find guilt beyond a reasonable doubt. *See State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304, syllabus; *State v. Harvey*, 4th Dist. Washington No. 21CA3, 2022-Ohio-2319, ¶ 24. Because a trier of fact sees and hears the witnesses, appellate courts will also afford substantial deference to a trier of fact's credibility determinations. *State v. Schroeder*, 2019-Ohio-4136, 147 N.E.3d 1, ¶ 61 (4th Dist.).

### 2. Elements of Possession of Deadly Weapon

**{¶27}** Possession of a deadly weapon is prohibited by R.C. 2923.131(B): "No person under detention at a detention facility shall possess a deadly weapon." Deadly weapon is defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). To convict Evans, the state would have to prove: (1) Evans was under detention at a detention facility; (2) Evans possessed an object capable of inflicting death; and (3) the object was either (a) designed or specially adapted for use as a weapon or (b) possessed, carried or used as a weapon. *State v. Gibson*, 4th Dist. Ross No. 10CA3174, 2011-Ohio-1651, ¶ 20. Evans contests the second element: that the weapon was capable of inflicting death.

### 3. Analysis of Sufficiency and Manifest Weight of the Evidence

**{¶28}** Officer Borland testified that Evans referred to the weapon in his pocket as a "knife" and Borland identified that the four-inch metal scissor blade, that had been modified

to have a sharper endpoint and better grip, was the weapon that he removed from Evans's pants pocket. Officer Borland was explicitly asked by defense counsel whether the fact that a portion of the blade was wrapped in bed sheets would affect its function and he testified that it would make it easier to use because it provided a better grip and enabled better penetration of the skin.  Other courts have found that the size of the object does not prevent its use as a deadly weapon. *See State v. Montanaro,* 5th Dist. Richland No. 21CA49, 2022-Ohio-4343, ¶ 10 (half of a broken metal tweezer, sharpened to a point, was sufficient evidence of a deadly weapon because "the small size of the item does not invalidate its use as a deadly weapon because it is easy to conceal and inflict poking-type injuries to vital organs"). Trooper Wells testified that the sharpened metal scissor blade was "very easily a deadly weapon in multiple forms * * * this can both stab and/or cut so it is a very dangerous weapon* * * the stiffness of the metal, that makes it very likely that it could cause harm or death."

{¶29}  Finally, the weapon was admitted into evidence at trial and the jury was able to see the four-inch metal sharpened scissor blade and its bed sheet grip. It is well within the comprehension of a layperson and requires only common knowledge and experience to understand whether a four-inch sharpened metal scissor blade is capable of inflicting death. *See generally Adkins v. Yamaha Motor Corp., U.S.A.*, 2014-Ohio-3747, 17 N.E.3d 654, ¶ 24 (4th Dist.) (specialized expert testimony is not necessary for matters that fall within the common knowledge and experience of a layperson).

{¶30}  We reject Evans's contention that his conviction was not supported by sufficient evidence. After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of possession of a

deadly weapon proven beyond a reasonable doubt. Evans was under detention, was in possession of the weapon, and it was adapted for use as a weapon because it was sharpened and a grip added. These elements were not contested by him on appeal and were proven beyond a reasonable doubt.  As to the contested element, there was evidence that the weapon was capable of inflicting death through the testimony of several officers and by the admission of the object itself for the jury's inspection. Any rational trier of fact could have found that the sharpened metal scissor blade was capable of inflicting death.

{¶31}  We also reject Evans's contention that his conviction was against the manifest weight of the evidence. After our review of the record, and after we consider the evidence and testimony adduced at trial and all reasonable inferences therefrom, witness credibility, and the conflicts in the evidence or lack thereof, we do not believe that the jury clearly lost its way so as to create a manifest miscarriage of justice such that Evans's conviction must be reversed and a new trial ordered.  Instead, we believe that the state adduced substantial evidence at trial through the admission of the weapon and the uncontroverted witness testimony of Officer Webb, Officer Borland, and Trooper Wells to prove all of the elements of this offense beyond a reasonable doubt.

{¶32}  We overrule Evans's second and third assignments of error.

### C. Regan Tokes Law

{¶33}  For his fourth assignment of error, Evans contends that the trial court erred by sentencing him under the Reagan Tokes Law because it is unconstitutional. He argues that it violates his right to a jury trial, the separation of powers doctrine, and due process and equal protection. Evans concedes that he did not challenge the constitutionality of the Reagan Tokes Law at the trial level and has therefore forfeited all but plain error review.

*State v. Alexander*, 2022-Ohio-1812, 190 N.E.3d 651, ¶ 52 (4th Dist.).

**{¶34}** We have rejected all three arguments multiple times in recent court decisions and will not rehash the analysis again here as Evans does not address any of these decisions or offer any reason for us to revisit them. In short, we reject his arguments that the Regan Tokes Law violates the right to trial by jury, the separation of powers doctrine, or that it violates due process and equal protection rights. *E.g., State v. Holsinger,* 4th Dist. Lawrence No. 21CA20, 2022-Ohio-4092, ¶ 33-57; *State v. Wells*, 4th Dist. Washington No. 21CA16, 2022-Ohio-3793, ¶ 36-41; *State v. Drennen*, 4th Dist. Gallia No. 21CA10, 2022-Ohio-3413, ¶ 16-27; *State v. Long,* 4th Dist. Pickaway No. 20CA9, 2022-Ohio-3212, ¶ 8; *State v. Chapman*, 2022-Ohio-2853, 195 N.E.3d 178, ¶ 70-78 (4th Dist.); *Alexander* at ¶ 44-61; *State v. Bontrager*, 2022-Ohio-1367, 188 N.E.3d 607, ¶ 34-49 (4th Dist.).

**{¶35}** We note that the Reagan Tokes Law has been found constitutional by the Second, Third, Fifth, Sixth, and Twelfth Districts and also by the Eighth District sitting en banc. *See, e.g., State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153; *State v. Hacker*, 2020-Ohio-5048, 161 N.E.3d 112 (3d Dist.); *State v. Ratliff,* 5th Dist. Guernsey No. 21CA16, 2022-Ohio-1372; *State v. Maddox,* 2022-Ohio-1350, 188 N.E.3d 682 (6th Dist.); *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *State v. Delvallie,* 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.).

**{¶36}** We overrule Evans's fourth assignment of error.

### IV. CONCLUSION

**{¶37}** We overrule Evans's four assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED
.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed. Appellant to pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


                                                                For the Court




                                                                BY:_____
                                                                        Michael D. Hess, Judge


                                        NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.