[Cite as *State v. Jarrells*, 2024-Ohio-2816.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 22CA3990 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| MATTHEW JARRELLS, | : | |
| | : | |
| Defendant-Appellant. | : | **RELEASED: 07/15/2024** |

APPEARANCES:

Valerie M. Webb, Portsmouth, Ohio, for appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay S. Willis, Assistant Scioto County Prosecutor, Portsmouth, Ohio for appellee.

Wilkin, J.

{¶1} This is an appeal from a Scioto County Court of Common Pleas judgment entry that convicted appellant, Matthew Jarrells ("Jarrells"), of breaking and entering, a fifth-degree felony, and theft from a person in a protected class, a fourth-degree felony. On appeal Jarrells maintains that his convictions are not supported by sufficient evidence, are against the manifest weight of the evidence, and that his trial counsel was ineffective. After reviewing the parties' arguments, the record, and the applicable law, we find his convictions are supported by sufficient evidence, are not against the manifest weight of the evidence, and his claim for ineffective assistance of counsel lacks merit. Therefore, we affirm the trial court's judgment of convictions.

BACKGROUND

{¶2} On February 16, 2022, a grand jury indicted Jarrells on two criminal counts: (1) breaking and entering in violation of R.C. 2911.13(B) and (C), a fifth-degree felony, and (2) theft from a disabled adult, Catherine Fitch, in violation of R.C. 2913.02(A)(1) and (B)(3), a fourth-degree felony.  Count 2, further alleged that the theft involved property worth at least $1,000 but not more than $5,000.

{¶3} On March 22, 2022, the State moved to amend the indictment to show that the property upon which Jarrells trespassed to commit breaking and entering was jointly owned by Catherine Fitch and James D. Fitch.  Therefore, the State moved the court to amend both counts of the indictment to include James D. Fitch as the joint property owner with Catherine Fitch in Count 1, and as the victim of the theft in Count 2.  Defense counsel objected, but the court overruled the objection and granted the State's motion to amend.

{¶4} Starting on March 14, 2022, a two-day trial before a jury was held. The State presented five witnesses: Portsmouth police officer Tori Galloway, probation officer Craig Johnson, Catherine Fitch, James D. Fitch ("James D.") and James C. Fitch ("James C.").

{¶5} Officer Galloway testified that on January 11, 2022 she investigated the theft of a generator from the Fitches' property at 2528 17th Street in Scioto County, Portsmouth, Ohio.  Her report indicated that Jarrells was on or about the Fitches' property late on January 10, 2022, and early on January 11, 2022.

{¶6} The State's next witness was Craig Johnson, a probation officer with the Portsmouth Municipal Court.  Johnson stated that his job was to electronically

track defendants who are on probation. Jarrells was one of the defendants Johnson was tracking at the time of the theft herein. Johnson testified that on January 12, 2022, he received a notification that the battery on Jarrells' GPS monitor was getting low, so, he sent a message to Jarrells to charge it. Johnson testified that Jarrells was supposed to be at a treatment center at that time, but he noticed that Jarrells was at another location. Johnson contacted the treatment facility, which told him that Jarrells had left three days prior. Johnson stated that shortly after receiving the low battery alert, he received another alert indicating that Jarrells' GPS monitor had been removed from his ankle.

{¶7} Johnson drove to the location where Jarrells' GPS monitor indicated that it had been removed, which was on Summit Street in Portsmouth. Johnson found Jarrells in a backyard with a hatchet in his hand. After retrieving the GPS monitor from under some bricks, Johnson then took Jarrells into custody without incident.

{¶8} Johnson testified that later that day he saw Jarrells' picture on Facebook pertaining to the theft herein. Johnson contacted the police, who provided him the Fitches' address. Using data from Jarrells' GPS tracker, Johnson was able to create several overhead satellite maps that showed Jarrells' location marked at one-minute intervals from January 10, 2022 at midnight through January 11, 2022 at 2:15 a.m. The marked locations had an accuracy of about 17 feet. The GPS data showed that Jarrells was on, or in close proximity to, the Fitches' property, 2528 17th Street, Portsmouth, Ohio shortly after midnight on January 11, 2022.

{¶9} Catherine Fitch was the State's next witness. She lives at 2528 17th Street, Portsmouth, Ohio with her husband, James D. She testified that sometime between late January 10, 2022 or early January 11, 2022, a generator was stolen from their yard. She indicated that their home has video surveillance cameras.

{¶10} Catherine testified that James D. served in the army and at the age of 28 was disabled when he was hit by a truck. She claimed that as a result he needs dialysis four times a week. She stated that the Veterans Administration ("V.A.") provided the generator to him to power his dialysis equipment in case there was a power outage.

{¶11} Catherine identified the manual that came with the stolen "Dayton" Generator, as well as a picture of it. She indicated that the generator was stored on the back deck. She also identified a receipt for a "Dayton 5000" generator. The receipt shows the generator was delivered from Triple A Healthcare. She claimed that if their power went out and they did not have the generator, then it would be life threatening for James D. because he would be unable to operate his dialysis equipment.

{¶12} The next witness was James D. who stated that he also lives at 2528 17th Street, Portsmouth, Ohio. James D. confirmed that a generator was stolen from his home. He stated that he was a disabled army veteran. He claimed that the V.A. purchased that generator for him to be a backup power source for his dialysis equipment if the power went out. James D. stated that he needs dialysis four times a week. He testified that he never consented for

Jarrells to borrow or use his generator. James D. had seen the generator, which was kept on the back deck of his home, the morning before it was stolen.

{¶13} The State's final witness was James C., who is the son of Catherine and James D., who lives at 2528 17th Street, Portsmouth, Ohio, with his parents. James C. testified that he was home January 10 and 11, 2022 when the generator was stolen. He believed that the generator was last seen on January 9 or 10, 2022. He further stated that he noticed the generator was missing on the morning of January 11, 2022.

{¶14} James C. testified that he has known Jarrells since they were children. He indicated that Jarrells came over to his house around 10 p.m., on the evening of January 10, 2022. Specifically, Jarrells came to the back door and wanted to hangout. James C. was not interested in hanging out and Jarrells left.

{¶15} James C. further testified that he had installed security cameras at his house. The video displays time that elapses as the video is shown. However, because he did not realize that he needed to set the time stamp for the cameras, the date of a recorded event may be accurate, but the time that it is recorded is not.

{¶16} The State played the two surveillance videos from January 10 and 11, 2022 that showed the Fitches' backyard. In the first video, James C. identified the back deck on their house with Jarrells walking up the steps. Then later in the video, James C. identified Jarrells as the person pulling the generator off the deck and out of the yard.

**{¶17}** The State then played a second video from the Fitch property, which also showed the Fitches' backyard but from a slightly different perspective. James C. identified Jarrells coming to the backdoor of the Fitches' house where they briefly spoke as James C. had previously stated. Approximately two hours later, the video shows a person, who James C. identified as Jarrells, pulling the generator out of the Fitches' yard.

**{¶18}** James C. maintained that Jarrells was wearing the same coat and shoes that he was wearing when he first came to the back door as well as later when he stole the generator. James C. stated that he had not given Jarrells permission to exert control over or use the generator.

**{¶19}** The jury found Jarrells guilty on both counts, i.e., breaking and entering to commit a felony, and theft from a person in a protected class.

**{¶20}** On March 15, 2022, the court held a sentencing hearing. On March 16, 2022, the court issued an entry sentencing Jarrells to 12 months in prison on Count 1, and 18 months in prison on Count 2. Both sentences were to be served consecutively for an aggregate 30-month prison term. It is this judgment that Jarrells appeals asserting three assignments of error.

## ASSIGNMENTS OF ERROR

I. APPELLANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THERE IS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF GUILTY BEYOND A REASONABLE DOUBT.

II. APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED.

III. APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE IN HIS REPRESENTATION OF APPELLANT BY COMMITTING CRUCIAL ERRORS DURING THE TRIAL OF APPELLANT'S CASE.

### I. First Assignment of Error

{¶21} In his first assignment of error Jarrells claims that his convictions for breaking and entering and for theft of a person from a protected class are not supported by sufficient evidence.

{¶22} Jarrells first argues that there is insufficient evidence to support that James D. was a person with a disability, which is an element of the offense of a theft from a person of a protected class. Jarrells admits that both James D. and Catherine testified that James D. is a disabled veteran, but he claims that was insufficient to support that James D. was from a protected class of persons for purposes of the theft conviction. Therefore, Jarrells claims that the State failed to prove James D. was a disabled veteran beyond a reasonable doubt.

{¶23} Jarrells also argues that there is insufficient evidence to prove when a generator was taken and if the generator was the one described in James D.'s bill of sale. Although the State provided a "bill of sale" for a generator, Jarrells maintains that there was no testimony to connect the generator referenced in the bill of sale with the one owned by James D., or that showed when the generator was stolen.

{¶24} Finally, Jarrells claims that no one actually witnessed the theft of the generator on the evening of January 10, 2022 or early morning of January 11th and no one noticed the generator was gone until the morning of the 11th. Jarrells also questions James C.'s identification of him as the thief in the surveillance video.

{¶25} Therefore, Jarrells maintains that there is insufficient evidence to support his convictions.

{¶26} In response, the State maintains that there is sufficient evidence to support Jarrells' convictions for both breaking and entering and for theft of a person from a protected class.

{¶27} The State claims that the evidence shows that both Catherine and James C. knew the appellant from the past. The State asserts that the surveillance video, a photo, and GPS data all corroborate the testimony of the Fitches that appellant trespassed on their property and stole their generator on January 10 or 11, 2022.

{¶28} Regarding Jarrells' claim that there was no evidence that James D. was a disabled veteran, both Catherine and James D. testified regarding James D.'s health (needed dialysis) and history (he was in the military and was disabled when hit by a truck), which were not challenged. Further, the trial court and counsel commented about making accommodations for James D.'s disability. Finally, the existence of the generator, which was a backup power source for James D.'s dialysis treatment, together with the fact that it was provided to him by the Department of Veterans Affairs was sufficient to show that James D. was a disabled veteran.

{¶29} The State maintains that there was competent, credible evidence upon which a jury could convict Jarrells of breaking and entering and of theft of a person of a protected class. Therefore, the State maintains that we should overrule Jarrells' first assignment of error.

A. Law

1. Standard of Review

**{¶30}** "The sufficiency-of-the-evidence test 'raises a question of law and does not allow us to weigh the evidence.' " *State v. Knowlton*, 2012-Ohio-2350, ¶ 11 (4th Dist.), quoting *State v. Smith,* Pickaway, 2007-Ohio-502, ¶ 34 (4th Dist.). "Instead, the sufficiency-of-the-evidence test ' "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." ' " *Id.*, quoting *Smith* at ¶ 33, quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

**{¶31}** "When reviewing a case to determine if the record contains sufficient evidence to support a criminal conviction, we must ' "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." ' " *Id.* at ¶ 10, quoting *Smith* at ¶ 33, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Thus, " ' "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." ' " *Id.*, quoting *Smith* at ¶ 33 quoting *Jenks* at paragraph two of the syllabus. Consequently, a reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds cannot reach the same conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162 (2001).

## 2. Evidence

**{¶32}** Evidence may be direct or circumstantial. "[D]irect evidence is ' "[e]vidence, which if believed, proves existence of fact in issue without inference or presumption[.]" ' " *State v. Smith*, 2010-Ohio-4507, ¶ 43 (4th Dist.), quoting *Reeves v. Vitt,* 2009-Ohio-2436, ¶ 41 (11th Dist.), quoting Black's Law Dictionary (6th Ed.1990). We have recognized that "a witness's identification of a criminal defendant from "surveillance video constitutes direct, rather than circumstantial, evidence." *State v. Hill*, 2010-Ohio-2552, ¶ 15 (4th Dist.). " 'Circumstantial evidence is defined as "[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved." ' " *State v. Meddock*, 2017-Ohio-4414, ¶ 54 (4th Dist.), quoting *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988), quoting Black's Law Dictionary (5th Ed.1979).

> Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the State relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.

*State v. Collins*, 2024-Ohio-794, ¶ 27 (4th Dist.), quoting *Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus.

**{¶33}** Testimony alone is sufficient to support an appellant's criminal conviction. *See State v. Jackson*, 2020-Ohio-7034 (4th Dist.), ¶ 50 (victim's testimony alone was sufficient to support appellant's rape conviction); *State v. Cunningham*, 1993 WL 97713, *13 (4th Dist. Apr. 2, 1993) (store manager's testimony alone was sufficient to prove appellant's complicity to commit theft).

### 3. Jarrell's Criminal Offenses

**{¶34}** Jarrells was convicted of breaking and entering.  In pertinent part, R.C. 2911.13 provides:

> (B) No person shall trespass on the land or premises of another, with purpose to commit a felony.

> (C) Whoever violates this section is guilty of breaking and entering, a felony of the fifth degree.

**{¶35}** Jarrells was also convicted of theft from a person in a protected class.  R.C. 2913.02 provides:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
> (1) Without the consent of the owner or person authorized to give consent;
>
> * * *
>
> (B)
>
> * * *
>
> (3) Except as otherwise provided in division (B)(4), (5), (6), (7), (8), or (9) of this section, if the victim of the offense is an elderly person, disabled adult, active duty service member, or spouse of an active duty service member, a violation of this section is theft from a person in a protected class, and division (B)(3) of this section applies. Except as otherwise provided in this division, theft from a person in a protected class is a felony of the fifth degree. If the value of the property or services stolen is one thousand dollars or more and is less than seven thousand five hundred dollars, theft from a person in a protected class is a felony of the fourth degree.

**{¶36}** For purposes of R.C. 2913.02, the Fifth District Court of Appeals has determined that

> a "Disabled adult" means a person who is eighteen years of age or older and has some impairment of body or mind that makes the person unable to work at any substantially remunerative employment that the person otherwise would be able to perform and that will, with reasonable probability, continue for a period of at least twelve months without any present indication of recovery from the impairment, or who is eighteen years of age or older and has been certified as permanently and totally disabled by an agency of this State or the United States that has the function of so classifying persons.

*State v. Flanagan*, 2019-Ohio-4665, ¶ 19 (5th Dist.), citing R.C. 2913.01(DD).

If a person is unable to work because of a disability, then they are eligible to receive social security disability benefits. *See Watchowski v. Watchowski*, 2010-Ohio-1501, ¶ 20-21 (3rd Dist.).

### B. Analysis

**{¶37}** Jarrells first claims that the State failed to provide sufficient evidence of James D.'s status as a protected person pursuant to R.C. 2913.02 beyond a reasonable doubt.

**{¶38}** The State argues that Jarrells' argument ignores the testimony of Catherine and James D. about James D.'s health, which was uncontroverted.

**{¶39}** Catherine testified that her husband, James D., had multiple disabling injuries. She asserted that he was disabled at the age of 28 after being run over by a truck. She stated as a result of that accident, he received "social security disability[,]" until he reached retirement age and now receives "regular" social security.

**{¶40}** Catherine also testified that James D. was a veteran and that he receives benefits from the V.A. for his disability. Catherine claimed that James D. requires four dialysis treatments each week. She testified that the V.A.

provided James D. the generator as an alternative source of power to operate his dialysis machine if the power goes out.

**{¶41}** In viewing Catherine's testimony in a light most favorable to the prosecution, we find that any rational jury could have found that since the age of 28 James D. has been a "disabled adult" under R.C. 2913.02 for purposes of the offense of theft of a person from a protected class.

**{¶42}** Jarrells next argues that there is insufficient evidence to prove "[t]he existence of the generator or how the Fitches came into possession of it."  He also argues that there is "no evidence to show exactly when a generator was taken from the property or if it was the one described in the bill of sale."  Jarrells also complains that there was no "eyewitness" to the theft.

**{¶43}** James D., Catherine, and James C. all testified that James D. owned a generator that was provided to him as a benefit from the V.A.  They all also testified that the generator was kept on the back deck of their house. Further, the State submitted into evidence a picture, bill of sale, and packing list for a "Dayton" brand generator owned by James D.  Finally, the object seen in the surveillance video taken from the Fitches' yard looks like the picture of the generator that was entered into evidence.

**{¶44}** Theft is described as when a person, "with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over either the property * * * [w]ithout the consent of the owner or person authorized to give consent."  R.C. 2913.02(A)(1).  Precisely *when* a theft occurs is not an element of the offense.  That said, Catherine and James D. both testified that they were

home on January 10 and 11, 2022 and the generator was stolen sometime over that time period. James D. testified that he believed that he saw the generator on the deck the morning of January 10, 2022. James C. testified that he noticed the generator was missing at approximately 11:00 a.m. on January 11, 2022. However, the most compelling evidence that James D.'s generator was stolen is the testimony of James C. who identified Jarrells as the person in the surveillance video who took the generator from the Fitches' backyard, which we discuss below.

{¶45} As Jarrells recognizes there was no "eyewitness" to the theft of the generator as it occurred. But an eyewitness identification of a thief in real time is unnecessary. A witness's identification of a criminal defendant from surveillance video constitutes direct evidence of the thief's identity. *Hill*, 4th Dist. Highland No. 09CA30, 2010-Ohio-2552, ¶ 15. James C. testified that he had known Jarrells for years. On the evening of January 10, 2022, prior to the theft, Jarrells came to the Fitches' back door where he and James C. had a brief discussion. At that time, Jarrells was wearing a coat with distinctive clasps. Later, surveillance video showed a male wearing the same distinctive coat taking the generator from the Fitches' yard. James C. identified the male from the surveillance video as Jarrells.

{¶46} James C.'s testimony identifying Jarrells as the person in the surveillance video is corroborated by the GPS data from Jarrells' probation monitoring device that placed Jarrells in or within the vicinity of the Fitches' property between midnight January 10, 2022 and 2:15 a.m. on January 11, 2022.

**{¶47}** In considering the testimony of Catherine and James D., the surveillance video in conjunction with James C.'s testimony identifying Jarrells as the person in the surveillance video who took the generator, and the GPS data from Jarrells' probation monitoring device in a light most favorable to the prosecution, we find any rational trier of fact could have found that Jarrells was the person who stole James D.'s generator. Therefore, we find that there is sufficient evidence to support Jarrells' convictions for breaking and entering, a fifth-degree felony, and for theft from a person in a protected class, a fourth-degree felony. Accordingly, we overrule Jarrells' first assignment of error.

## II. Second Assignment of Error

**{¶48}** In his second assignment of error, Jarrells claims that his convictions are against the manifest weight of the evidence. Jarrells maintains there was no direct evidence that showed him stealing the generator, and the circumstantial evidence is not enough to prove his guilt. James C.'s identification of Jarrells as the thief was based solely on his identification of Jarrells from the surveillance video. Jarrells suggests that the person in the video was not him. Jarrells also maintains that it was dark at the time of the theft and suggests that James C. may have had some "animus" against him.

**{¶49}** In response, the State argues that circumstantial evidence carries the same weight as direct evidence. The State claims that there is overwhelming evidence of Jarrells' guilt. First, there was GPS tracking data that placed Jarrells at the Fitches' residence at the time of the theft. The State also asserts that the GPS data is corroborated by video and verbal testimony indicating that Jarrells

was the person who stole the generator.  Therefore, the State argues, Jarrells'

convictions are supported by the manifest weight of the evidence.

### A. Law: Standard of Review

{¶50} "Even when sufficient evidence supports a verdict, we may conclude

that the verdict is against the manifest weight of the evidence, because the test

under the manifest weight standard is much broader than that for sufficiency of

the evidence." *State v. Stevens*, 2009-Ohio-6143, ¶ 18 (4th Dist.), citing *State v.*

*Banks*, 78 Ohio App.3d 206, 214 (10th Dist. 1992).  In a manifest-weight-of-the-

evidence analysis, "the appellate court 'sits as a thirteenth juror' and assesses

whether it disagrees with the factfinder's resolution of the conflicting testimony."

*State v. Griffin*, 2013-Ohio-3309, ¶ 31 (4th Dist.), quoting *State v. Thompkins,* 78

Ohio St.3d 380, 387, 1997-Ohio-52.  "Weight of the evidence concerns the

inclination of the greater amount of credible evidence offered at trial to support

one side of the issue over the other; it relates to persuasion and involves the

effect of the evidence in inducing belief." *Fox v. Positron Energy Res., Inc.*,

2017-Ohio-8700, ¶ 10 (4th Dist.), citing *Paulus v. Beck Energy Corp.*, 2017-Ohio-

5716, ¶ 16 (7th Dist.).

{¶51} " 'In determining whether a criminal conviction is against the

manifest weight of the evidence, we must review the entire record, weigh the

evidence and all reasonable inferences, [and] consider the credibility of

witnesses[.]' " [Brackets sic.]  *State v. Ratliff*, 2024-Ohio-61, ¶ 48 (4th Dist.),

quoting *State v. Evans*, 2023-Ohio-1879, ¶ 26 (4th Dist.), citing *Thompkins*, 78

Ohio St.3d at 387, 1997-Ohio-52.  But, "we 'generally must defer to the fact-

finder's credibility determinations.' " *Id.*, quoting *State v. McNichols*, 2020-Ohio-2705, ¶ 10 (4th Dist.), citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21. We " 'determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary.' " *Id.*, quoting *Evans* at ¶ 26. Ultimately, " '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *State v. Newcomb*, 2024-Ohio-805, ¶ 19 (4th Dist.), quoting *C.E. Morris Co. v. Foley Const. Co.,* 54 Ohio St.2d 279 (1978), syllabus.

### B. Analysis

**{¶52}** Jarrells suggests that James C. was a biased witness. However, Jarrells fails to state why James C. was biased, let alone present any evidence of the alleged bias.

**{¶53}** Jarrells also appears to argue that James C.'s identification of Jarrells as the person who stole the generator by way of surveillance video renders his convictions as being against the weight of the evidence because there is no direct evidence tying Jarrells to the theft. But, James C.'s identification of Jarrells as the thief pursuant to the surveillance video is direct evidence. *Hill*, 4th Dist. Highland No. 09CA30, 2010-Ohio-2552, ¶ 15. And even if it was not, circumstantial evidence possesses the same probative value as direct evidence.

{¶54} Finally, Jarrells also suggests that the thief's identity was obscured by darkness. The evidence showed that Jarrells came to the back door of the Fitches' home and was briefly face-to-face with James C. prior to the theft that occurred later that night. The surveillance video captured that encounter and showed Jarrells was wearing a coat with unique clasps. Subsequent surveillance video showed the thief taking the generator, who James C. identified as Jarrells. Notably, the thief in that video appears to be wearing a coat with the same unique clasps that Jarrells was wearing earlier when he had come face-to-face with James C. In fact, James C. testified that the coat and shoes that Jarrells was wearing when he came to the back door are the same shoes and coat that the person who stole the generator was wearing. This evidence corroborates James C.'s identification of Jarrells as the thief later in the video. Moreover, as we discussed supra the GPS data from Jarrells' probation monitoring device also corroborates James C.'s testimony.

{¶55} In reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find that Jarrells' convictions are supported by some, competent, credible evidence. Therefore, because we find that his convictions are not against the manifest weight of the evidence, we overrule Jarrells second assignment of error.

Third Assignment of Error

{¶56} In his third assignment of error, Jarrells asserts that his trial counsel was ineffective in making two errors that prejudiced him. The first was when his counsel failed to object to the State's motion to amend the indictment to add

James D. as a victim to the theft.  He also claims that his counsel failed to object to the State asking leading questions of its witnesses.

{¶57} In response, the State maintains that Jarrell's trial counsel *did* object to the State's motion to amend his indictment.  Consequently, Jarrells cannot claim that his trial counsel was ineffective for failing to object to that motion.

{¶58} The State also maintains that even if his counsel was ineffective for not objecting to the State's use of leading questions, Jarrells cannot demonstrate a reasonable probability that the result of the trial would have been any different had the State been prevented from asking its witnesses leading questions because there is an overwhelming amount of circumstantial evidence supporting Jarrells' convictions.

{¶59} Therefore, the State asserts that Jarrells' trial counsel was not ineffective so his third assignment of error should be overruled.

Law

1. Ineffective Assistance of Counsel

{¶60} "To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial."  *State v. Platt*, 2024-Ohio-1330, ¶ 89 (4th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687, (1984).  "In Ohio a properly licensed attorney is presumed competent."  *State v. Ruble*, 2017-Ohio-7259, ¶ 47 (4th Dist.), citing *State v. Gondor*, 2006-Ohio-6679, ¶ 62. Therefore, when reviewing an ineffective-assistance-of-counsel claim, "we must indulge in 'a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.*, quoting *Strickland* at 697.

**{¶61}** " 'Failure to satisfy either part of the test [i.e. to show deficient performance or prejudice] is fatal to the claim.' " *Platt* at ¶ 88, quoting *State v. Jones*, 2008-Ohio-968, ¶ 14 (4th Dist.). "Therefore, if one element is dispositive, a court need not analyze both." *Id.*, citing *State v. Madrigal*, 87 Ohio St.3d 378, 389, (2000).

### 2. Leading Questions

**{¶62}** Evid.R. 611(C) states:

> Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

**{¶63}** This court has considered whether failing to object to leading questions supports a claim for ineffective assistance of counsel in *State v. Carroll*, 2016-Ohio-7218 (4th Dist.). We began our analysis by recognizing that " 'Evid.R. 611(C) does not preclude the use of leading questions on direct examination; instead, the rule provides that "it is within the trial court's discretion to allow leading questions on direct examination." ' " *Id.* at ¶ 32, quoting *State v. Williams,* 2016-Ohio-733, ¶ 34 (4th Dist.), quoting *State v. Jackson,* 92 Ohio St.3d 436, 449, (2001). "Accordingly, 'the failure to object to leading questions

does not constitute ineffective assistance of counsel.' " *Id.,* quoting *Jackson* at

449, and citing *State v. Stairhime,* 2014-Ohio-1791, ¶ 46 (3rd Dist.) (stating that

"we cannot find that any failure to object to any leading questions would rise to

the level of ineffective assistance of counsel").  Consequently, in *Carroll* we

rejected appellant's claim that trial counsel performed ineffectively by failing to

object to leading questions.  *Id.*

Analysis

**{¶64}** Jarrells first argues that his counsel was ineffective for failing to

object to the State's motion to amend the indictment.  However, as admitted in

Jarrells' appellate reply brief, his appellate counsel mistakenly thought that

Jarrells' trial counsel failed to object to the State's motion to amend the

indictment, when in fact, he did object.  Therefore, Jarrells has no claim that his

trial counsel was ineffective for failing to object to the State's motion to amend

the indictment.

**{¶65}** Regarding Jarrells allegation that his counsel was ineffective for

failing to object to leading questions, as we held in *Carroll*, leading questions

cannot be the basis for a claim of ineffective assistance of counsel.  Further,

even if leading questions could be the basis for a claim of ineffective assistance

of counsel, other than a general allegation, Jarrells fails to point out any specific

leading question or questions.  And finally, even assuming leading questions

could be the basis for a claim of ineffective assistance of counsel, the same

information would have been extracted from the witnesses in other forms of

questioning.  Therefore, even if specific leading questions had been identified,

the strength of the evidence (GPS data, James D's identification of Jarrells as the thief) means that there would be no change in the outcome of the trial, i.e., Jarrells would still be convicted.

**{¶66}** Therefore, we find that Jarrell's claim of ineffective assistance of trial counsel lacks merit and overrule his third assignment of error.

CONCLUSION

**{¶67}** Having overruled Jarrells' three assignments of error, we affirm the trial court's judgment entry of Jarrells' convictions.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and the appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.:  Concur in Judgment and Opinion.

For the Court,


BY: _____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**